PHILPOT, APPELLANT, *v.* WILLIAMS, APPELLEE.

(No. C-820209—Decided January 12, 1983.)

*Mr. Thomas J. Flynn,* for appellant.
*Mr. Eugene Smith,* for appellee.

*Per Curiam.* This cause came on to be heard on an appeal from the Court of Common Pleas of Hamilton County, Juvenile Division.

Plaintiff filed a complaint in the juvenile court alleging that the defendant was the father of her child who was born on June 30, 1970. Defendant pleaded not guilty to the complaint and the case was tried without a jury after waiver by both parties. At the conclusion of the trial, the defendant was found not guilty of being the father of the child in question. Plaintiff filed a timely notice of appeal and in her brief presents two assignments of error which we will address in the order presented.

Plaintiff first contends the court erred in refusing to permit the child, who was the subject of this paternity action, to testify in the action. By the proffer made, this ten year old child, had he been permitted to testify, would have testified that he called the defendant "father" and that the defendant allowed him to do so and also that the defendant, on occasion, offered to buy him gifts. In the separate findings of fact and conclusions of law, the trial court recorded that the child was not allowed to testify on the basis of public policy. The court assigned no other basis for refusing to permit the child to testify either at the time it was proposed to call the child as a witness or thereafter in the separate findings of fact and conclusions of law. The threshold question is therefore, by virtue of the presumption of regularity afforded to proceedings in trial courts, does public policy compel the rejection of a proposed witness in a paternity action when such witness is the child whose paternity is under inquiry? Counsel have not called to our attention any authority relative to the existence of such public policy.

The term "public policy" does not lend itself to precise definition. *L'Orange* v. *Medical Protective Co.* (C.A. 6, 1968), 394 F.2d. 57. The Ohio Ninth Appellate District defined public policy as "the community common sense and common conscience, extended and applied throughout the state to matters of public morals, health, safety, welfare and the like." *Snyder* v. *Ridge Hill Memorial Park* (1938), 61 Ohio App. 271 [15 O.O. 151], paragraph two of the syllabus, affirmed (1939), 135 Ohio St. 632 [15 O.O. 9]. Over sixty years ago the Supreme Court of Ohio held:

"Sometimes * * * public policy is declared by constitution; sometimes by

statute; sometimes by judicial decision. More often, however, it abides only in the customs and conventions of the people — in their clear consciousness and conviction of what is naturally and inherently just and right between man and man." *Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co.* v. *Kinney* (1916), 95 Ohio St. 64, 68.

The foregoing definitions, by their generality, afford little, if any, assistance. We perceive of no "clear consciousness and conviction" of the public that it would be "naturally and inherently" unjust to permit the child to testify under the facts of the cause *sub judice.* As a result of our independent research, we have been unable to find any authority in Ohio on the existence *vel non* of public policy excluding a child from testifying on the issue of his parentage. Defendant in his brief supporting the exclusionary ruling of the juvenile court raises only matters of credibility, not competency. The Ohio Rules of Evidence afford a strong implication that the child would be competent to testify. Evid. R. 601. The record reflects that the child was over ten years of age at the time he was called to testify. The events concerning which he would testify had occurred at some indefinite time in the past. Therefore, in the absence of a disqualifying public policy, the trial court was required to conduct a *voir dire* examination of the child to determine whether or not he met the competency qualifications of Evid. R. 601(A) as of the time of the happenings about which he proposed to testify. *Huprich* v. *Paul W. Varga & Sons, Inc.* (1965), 3 Ohio St. 2d 87 [32 O.O.2d 61]. We find that the court below erred in refusing, on the basis of public policy, to permit the child to testify.

We now proceed to the related question, *i.e.,* was the error in rejecting the witness prejudicial? The Supreme Court Commission of Ohio in 1876 held that "[w]here a witness offered is improperly rejected by the court, *as incompetent to testify in the case,* it will be held by a reviewing court, that the party offering the witness has been prejudiced by his exclusion, though the facts he was expected to prove are not shown by the record." (Emphasis *sic.*) *Wolf* v. *Powner* (1876), 30 Ohio St. 472; *Torrance* v. *Torrance* (1946), 147 Ohio St. 169 [34 O.O. 57]. In the case on review, however, the plaintiff made a proffer of what testimony was expected from the rejected witness. It is therefore not necessary to rely on the presumption of prejudice but an examination may be made, as in any other case of exclusion of evidence followed by proffer, to determine the prejudicial effect, in actuality as opposed to presumed, of the exclusion. A review of the entire transcript of the proceedings below leads us to the conclusion that the error in rejecting the child as a witness was not prejudicial error. The testimony of the witnesses for plaintiff as well as that of plaintiff herself can best be described as vague and general, specifically with reference to the times when the defendant would have had to have been in the presence of the child in order for the child to be able to testify in the manner proffered. The trial court expressly found that the defendant was a credible witness and that the plaintiff was not a credible witness. The trial court concluded, legally, that the plaintiff had not met her burden of proof and that the defendant was entitled to dismissal and discharge. The first assignment of error is not well-taken.

The second assignment of error is stated by the plaintiff as follows:

"The Trial Court erred to the prejudice of the Plaintiff-Appellant in weighing the evidence presented."

In the concluding statement of the argument supporting the second assignment of error, plaintiff more accurately assigns the error that the decision below was against the manifest weight of the evidence. A reviewing court will not reverse a judgment as against the weight of the evidence unless it is so manifestly contrary to the inferences to be drawn

from the record as to produce a result in complete violation of the concept of substantial justice. *Jacobs* v. *Benedict* (1973), 39 Ohio App. 2d 141 [68 O.O.2d 343]. A perusal of the entire record as certified to this court leads to the conclusion that the evidence and reasonable inferences deductible therefrom reflect that the plaintiff failed to sustain her burden of proof. Stated conversely, the judgment of the court below is not against the manifest weight of the evidence. *In re Sekulich* (1981), 65 Ohio St. 2d 13 [19 O.O.3d 192]. The second assignment of error is without merit.

Accordingly, it is the order of this court that the judgment of the court below be affirmed.

*Judgment affirmed.*

PALMER, P.J., DOAN and KLUSMEIER, JJ., concur.