The STATE of Ohio, Appellee,

v.

UHLER, Appellant.

[Cite as *State v. Uhler* (1992), 80 Ohio App.3d 113.]

Court of Appeals of Ohio,
Wayne County.

No. 2683.

Decided May 13, 1992.

114

*John M. Williams,* Assistant Prosecuting Attorney, for appellee.
*Robert N. Gluck,* for appellant.

REECE, Judge.

Defendant-appellant, David Uhler, was convicted on September 4, 1991 of gross sexual imposition after a jury trial in the Wayne County Court of

Common Pleas. In this direct appeal of that judgment he raises six assignments of error.

### Assignment of Error I

"The court committed prejudicial error contrary to the Defendant–Appellant's right to a fair trial by overruling a motion to suppress an interview with the deputy sheriff."

On July 30, 1991, Uhler filed a motion with the court seeking suppression of incriminating statements he had made during an interview at the Children Services Bureau. A hearing was conducted on August 13, 1991 at which both Uhler and Sergeant Timothy John McGuire, an investigator with the local sheriff's department, testified. They agreed, in large part, as to what had taken place that day.

Children Services had received a complaint from Uhler's wife, Sandra, regarding possible sexual abuse of her daughter. A worker at that department, Connie Beebe, contacted Uhler and requested that he present himself for an interview. Uhler agreed and voluntarily appeared at Children Services. He was directed to Beebe's office where he met her, one of her co-workers, and Sergeant McGuire. The latter made his connection to the sheriff's department known to Uhler.

While Uhler was never fully advised of his *Miranda* rights, he was told that he was not required to say anything and could leave at any time. Uhler chose to cooperate and freely discussed his wife's allegations with McGuire and the two Children Services workers.

Although his argument to this court is unclear, Uhler apparently believes that the incriminating remarks he made during this session should have been suppressed because he was not first advised that he had a right to counsel and that his statements could be used against him in a court of law. Such warnings are only required, however, prior to a "custodial interrogation" when a suspect "has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona* (1966), 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706. In *State v. Sublett* (Nov. 7, 1990), Medina App. No. 1914, unreported, at 3–4, 1990 WL 177462, this court explained that:

"A precise definition of [custodial interrogation] is not available, requiring instead an inquiry into 'how a reasonable man in the suspect's position would have understood his situation.' *Berkemer v. McCarty* (1984), 468 U.S. 420, 440–442 [104 S.Ct. 3138, 3150–3151, 82 L.Ed.2d 317, 334–336]; see, also, *State v. Warrell* (1987), 41 Ohio App.3d 286 [534 N.E.2d 1237]; *State v. Heilman* (Jan. 17, 1990), Medina App. No. 1823, unreported, at 3–4 [1990 WL 2930].

Although any examination by police will have coercive aspects to it, *Miranda* rights are not required for everyone who is questioned. *Oregon v. Mathiason* (1977), 429 U.S. 492, 495 [97 S.Ct. 711, 714, 50 L.Ed.2d 714, 719]. A suspect is entitled to *Miranda* explanations only when there is a restraint on freedom of movement of the degree associated with a formal arrest. *California v. Beheler* (1983), 463 U.S. 1121, 1125 [103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275, 1279]. Both the subjective intent of the [officer] as well as the subjective belief of the suspect are irrelevant in this analysis. *United States v. Bengivenga* (C.A.5, 1988), 845 F.2d 593, 597 (en banc)."

In the case before us, ample evidence confirms that Uhler's statement was taken in a noncustodial setting. His own testimony belies any suggestion that a reasonable person would have felt "restrained" or "confined" under similar circumstances. The mere fact that the investigation may have been focused upon him does not require a contrary conclusion. *Sublett, supra,* at 5.

Uhler also appears to argue that his statement was procured against his will. Again, the record is devoid of any concrete evidence of coercion. See *State v. Wiles* (1991), 59 Ohio St.3d 71, 81–82, 571 N.E.2d 97, 112–113; *State v. Cooey* (1989), 46 Ohio St.3d 20, 28, 544 N.E.2d 895, 907–908. By all accounts, Uhler voluntarily participated in the interview.

This assignment of error is overruled.

### Assignment of Error II

"The court committed error prejudicial to the rights of the defendant-appellant to have a fair trial by not striking the testimony of the nine year old child."

Prior to the victim's testimony, the trial judge conducted a voir dire examination of the young girl. She answered a few basic questions about herself and expressed her appreciation of the truth. The court determined that she could testify and the jurors were recalled. When the victim was finished, Uhler moved to strike her testimony on the grounds that she was "not capable of any just impressions." This request was overruled.

Uhler bases his argument upon Evid.R. 601, which states, in pertinent part:

"Every person is competent to be a witness except:

"(A) Those of unsound mind, and children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly."

The victim was nine years old at the time she was abused, but turned ten a few months prior to Uhler's trial. In a decision announced before the Ohio Rules of Evidence were adopted, the Supreme Court held that a compe-

tency determination is necessary if the child was under ten at the time of the events about which he or she is to testify. *Huprich v. Paul W. Varga & Sons, Inc.* (1965), 3 Ohio St.2d 87, 32 O.O.2d 61, 209 N.E.2d 390, paragraph one of the syllabus; see, also, *State v. Wallace* (1988), 37 Ohio St.3d 87, 94, 524 N.E.2d 466, 472–473. Cases arising after Evid.R. 601(A) took effect, however, have declared that this provision does not apply to a witness who is ten or older at the time he testifies regardless of his age when the events took place. *State v. Lewis* (1982), 4 Ohio App.3d 275, 277, 4 OBR 494, 496, 448 N.E.2d 487, 489–490; *State v. Self* (July 29, 1991), Clermont App. No. CA90–10–099, unreported, 1991 WL 144313; *State v. Smith* (Dec. 30, 1991), Butler App. No. CA91–06–104, unreported, 1991 WL 278241, but, see, *Philpot v. Williams* (1983), 8 Ohio App.3d 241, 242, 8 OBR 314, 315, 456 N.E.2d 1315, 1316.

 In any event, a competency examination was duly conducted in the proceedings before us. The trial judge is in the best position to determine who is able to testify and is afforded considerable discretion on such matters. *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph one of the syllabus. There is nothing in the record which necessitates a conclusion that the victim was absolutely incapable of perceiving and truthfully relating impressions of the facts. Any inconsistencies in her accounts went to the weight and credibility to be afforded by the jurors. See *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. We can discern no abuse of discretion.

This assignment of error is not well taken.

### Assignment of Error III

"The court committed error prejudicial to the right of the defendant-appellant to have a fair trial by admitting the transcript of the taped interview into evidence when the transcript contained opinions by the deputy sheriff as to the credibility of the child witness/victim."

During the interview at Children Services, Sergeant McGuire asked Uhler to tell what he knew in regard to his wife's complaint. Uhler claimed that he had previously discussed "the birds and the bees" with the victim. He further maintained that several weeks later, the victim told him that she "had been playing with herself a lot." According to Uhler, she had "rubbed herself raw in her vaginal area." He gave the child some Vasoline and showed her how to apply it so that she would not harm herself.

Sergeant McGuire posed the following question:

"[Sergeant McGuire]: * * * you known [*sic*] your daughter better than any of us in here. Does she normally tell the truth? Is she a truthful child?

"[Uhler]: As far as I know she has always told me the truth. Uh, I mean, yeah, I mean, truthful child, I mean yeah, I mean there's little, uh, the little, I wouldn't say lies, but, uh, half-truths, or not the whole story sometimes, you know, I mean they're not on anything of any, in, uh, significance or importance, but, you know, as far as I know, she's never lied to me about anything. * * * "

The investigator then disclosed that he had previously spoken with the victim:

"[Sergeant McGuire]: * * * I had conversation with [the victim], and the conversation I had is taped, and the conversation that she tells the same story in front of the jury, the jury is gonna have a hard time believing your story, and probably gonna believe her story one-hundred percent. * * *

"[Uhler]: Um hm.

" * * *

"[Sergeant McGuire]: * * * I want you to be straight forward with me because, either you're gonna tell me what I want to know today and tell us the truth, or you're gonna hem-haw around, and then what's gonna happen is I'm gonna pull three witnesses in that's gonna tell different stories if you don't tell me the truth today, and it's gonna look bad for you.

"[Uhler]: Um hm.

" * * *

"[Sergeant McGuire]: She can relate that there was an incident in the bathroom, uh, that is similar to what you're saying about the birds and the bees, but it got to the extent where, uh, you had taken her hand and put it on her [sic] penis to the point, 'til you came[']. And them [sic] cum [sic] came out, which she knew the name of because your wife had told her what it was, she said 'white stuff,' and you helped, and her [sic] wipe it off. Another incident was in the bedroom something similar to that. Two incidents that she could think of.

"[Uhler]: Um hm.

"[Sergeant McGuire]: Okay, now, if you were a jury and she relayed that story, and the one question I asked I asked her, I says 'Out of all the things, did dad ever threaten you?' 'Nope, dad never threatened me.' 'Did dad ever force you?' 'Nope, dad never forced me.' 'Why didn't you say anything?' 'Well I was scared.' 'Did he hit you or anything?' 'No.' 'Did he say it's your fault?' 'No, no he never said anything like that.' Un, I said 'Out of all these things that bother you, what one thing bothers you the most about your dad?'

"[Uhler]: Um hm.

"[Sergeant McGuire]: And she said 'It's what he did to me.' Now I'll tell you Dave, if I was a juror and if you were a juror, and a nine-year-old girl said that—

"[Uhler]: Um hm.

"[Sergeant McGuire]: It would be hard to get your train of thought on anything else than what she had just said, and, uh, I think that probably if you heard the tape, even just leave the emotion out of it as far as she is concerned. So I want you to at least look out for her, don't put her in the position of being a lier [*sic*] or things like that, the child's only nine years old.

"[Uhler]: I realize that.

"[Sergeant McGuire]: Alright. If you were teaching her, fine, if you, if you [*sic*] penis got hard, we need to know why it got to this point of you taking her hand and showing her things. Uh, she also says that on one occasion that you inserted at least one finger inside of her where it hurt, underneath her nightgown. Uh, I don't think mom has put those things into her. Uh, very rarely do we see mothers, even though it is in a divorce hearing.

"[Uhler]: Um hm.

" * * *

"[Sergeant McGuire]: * * * It was hard for her to even bring it out. She felt embar[r]assed, number one, uh, plus talking to a guy didn't help the matter any.

"[Uhler]: Um hm.

"[Sergeant McGuire]: And I'm sure she would have the same reaction if one of the ladies here would talk to her. It was an embar[r]assing situation where these children feel that they know something's wrong.

"[Uhler]: Um hm.

"[Sergeant McGuire]: But it's dad, an adult, it's just common that you don't go against them. I'm sure when you were smaller there was things your mom and dad did that you questioned, but, what are you gonna do, you know, it's easier to get your question, it's easier to get your head knocked off or something beyond that. But, I have to say I want you to be truthful, you know.

"[Uhler]: Um hm.

"[Sergeant McGuire]: We know a lot more than what you're saying, but we're giving you the opportunity.

"[Uhler]: Right."

At this point, Uhler told a substantially different story.

A transcript of the interview was produced at trial. Sergeant McGuire was questioned about the document's authenticity but its contents were never read aloud. The transcript was admitted into evidence and the jurors were permitted to examine it during deliberations.

 Given its superior vantage, the trial court enjoys broad discretion in the admission and exclusion of evidence and will not be reversed absent a clear abuse which has materially prejudiced the defendant. *State v. Hymore* (1967), 9 Ohio St.2d 122, 128, 38 O.O.2d 298, 302, 224 N.E.2d 126, 130; *Humphrey v. State* (1984), 14 Ohio App.3d 15, 18, 14 OBR 18, 21, 469 N.E.2d 981, 984. An abuse of discretion connotes more than an error of law or judgment as it implies the court's attitude was unreasonable, arbitrary, or unconscionable. *Steiner v. Custer* (1940), 137 Ohio St. 448, 451, 19 O.O. 148, 149, 31 N.E.2d 855, 856–857; *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 172–173, 404 N.E.2d 144, 149.

 Uhler argues on appeal, as he did at trial, that the first exchange addressing the victim's veracity should have been redacted since it prematurely bolstered her credibility. Evid.R. 608(A) provides:

"The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise."

Uhler does not dispute that the testimony in question satisfies the first prong of this rule. We are convinced that the second requirement is met as well. The victim testified that Uhler had placed his finger in her vagina. On direct examination, he flatly denied that he had ever done so. When cross-examined on this charge, he accused the victim of lying. Uhler having thus attacked her veracity, the jury was entitled to consider Uhler's prior endorsement of her ability to tell the truth. Evid.R. 608(A).

 Uhler contends that this character evidence should also have been excluded in accordance with *State v. Boston* (1989), 46 Ohio St.3d 108, 545 N.E.2d 1220, and *State v. Moreland* (1990), 50 Ohio St.3d 58, 552 N.E.2d 894. Both opinions declare that experts may not testify as to the believability of a child declarant's *specific statements. Boston, supra,* at syllabus; *Moreland, supra,* at syllabus. Neither decision prohibits proof of a truthful character, in general, through reputation or opinion testimony. Indeed, such demonstrations are expressly sanctioned by Evid.R. 405(A). See, generally, *State v.*

*Homonai* (May 29, 1991), Wayne App. No. 2603, unreported, at 6, 1991 WL 95251.

■ Detective McGuire's threats as to what a jury would believe, Uhler further argues, should also have been excised. It is readily apparent that these remarks were not intended to bolster the victim's credibility. Evid.R. 608(A). The evidence was not offered, moreover, as an independent expert opinion on believability as proscribed by *Boston* and *Moreland.* Rather, these statements were properly admitted because they were inextricably intertwined with Uhler's confession. The prosecution had a right to demonstrate that Uhler changed his story once the very real possibility of a conviction and imprisonment became clear to him. Allowing the jurors to speculate that perhaps Uhler had "come clean" after experiencing genuine guilt or remorse would cloak him with an air of legitimacy where none was warranted.

Uhler further maintains that the aforementioned excerpts from the interview transcript were inadmissible as irrelevant and unfairly prejudicial. Evid.R. 401, 402, and 403(A). We agree with the trial judge, nevertheless, that these admissions bear directly upon the crime charged. While highly damaging to the defense, there is nothing "unfair" about them.

This assignment of error is not well taken.

### Assignment of Error IV

"The court committed error at law when overruling the defendant-appellant's motion for a directed verdict at the close of the State's case, after all the evidence was closed and after the jury verdict."

Uhler sought a directed verdict at various points in the trial under Crim.R. 29(A). Each request was summarily denied.

It is fundamental that the state must prove every necessary element of the crime charged. *In re Winship* (1970), 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368, 375. After viewing the evidence in the light most favorable to the prosecution, this court must ask whether *any* rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia* (1979), 443 U.S. 307, 318–319, 99 S.Ct. 2781, 2788–2789, 61 L.Ed.2d 560, 573–574; see, also, *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

Gross sexual imposition is criminally proscribed by R.C. 2907.05, which declares, in part:

"(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual

contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

" * * *

"(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of such person."

In turn, "sexual contact" is defined by R.C. 2907.01(B) as:

" * * * any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."

 Uhler argues that there was no evidence that he was motivated to sexually arouse or gratify anyone, thereby precluding a conviction for gross sexual imposition. It has long been recognized that criminal intent can never be proven by the direct testimony of third parties. *State v. Huffman* (1936), 131 Ohio St. 27, 5 O.O. 325, 1 N.E.2d 313, paragraph four of the syllabus. Consequently, this court reasoned in *State v. Cobb* (Oct. 30, 1991), Lorain App. No. 91CA005045, unreported, at 8, 1991 WL 486873, that the existence of prurient motivations may be discerned from "the type, nature and circumstances of the contact, along with the personality of the defendant."

The victim explained at the trial that Uhler had at various times inserted his finger in her vagina. He had also rubbed substances she could not identify on her pubic region. In response, Uhler protested that he was only "medicating" her and denied any penetration.

Uhler admitted in the interview at Children Services, after being confronted by the victim's statements, that she had in fact touched his penis. He insisted that she had asked to feel it which he allowed as part of her general "sex education." The victim then inquired, according to Uhler's account, as to what his "cum" felt like. Uhler thereupon proceeded to masturbate, eventually ejaculating in the sink.

The victim testified, in contrast, that Uhler "told" her to "squeeze" his penis. He ejaculated on her hand in front of her. She was then instructed "not to tell anybody."

Based upon this testimony, the jurors could logically infer beyond a reasonable doubt that Uhler engaged in this conduct to sexually arouse or gratify himself. We will not disturb their verdict.

This assignment of error lacks merit.

## Assignment of Error V

"The court committed error at law prejudicial to the rights of the defendant-appellant by failing to grant a mistrial based on rebuttal remarks of the prosecuting attorney."

 After the prosecutor finished his closing arguments, Uhler unsuccessfully sought a declaration of mistrial based upon remarks that were made. It has been often recognized that the prosecution is entitled to a certain degree of latitude during summation. *State v. Woodards* (1966), 6 Ohio St.2d 14, 26, 35 O.O.2d 8, 14, 215 N.E.2d 568, 577–578. Prosecutorial misconduct is not grounds for error unless the defendant has been denied a fair trial. *State v. Smith* (1984), 14 Ohio St.3d 13, 14, 14 OBR 317, 318, 470 N.E.2d 883, 885; *State v. Maurer* (1984), 15 Ohio St.3d 239, 266, 15 OBR 379, 402, 473 N.E.2d 768, 792.

Uhler objects specifically to a series of comments addressing the criminality of his conduct:

" * * * [Defense counsel] says this is a shame, not a crime. If not a crime, then what? Are we to say that this type of activity is okay? There's no penalty for it as long as a person says it's educational? Are we to say that that's a shame when someone, a stepfather, an uncle, a neighbor who is left to care for the children, decides to give the child this kind of sex education, but then say, 'but there's nothing that we can do about it?' "

As the state notes, this comment was directed to defense counsel's own declarations during closing arguments that Uhler had merely made a "mistake," "a big error in judgment," but committed no crime. The prosecutor's measured response was therefore invited and was not out of bounds. *United States v. Young* (1985), 470 U.S. 1, 12–13, 105 S.Ct. 1038, 1044–1045, 84 L.Ed.2d 1, 10–11.

 Uhler also raises issue with the prosecutor's final comment to the jury:

" * * * [L]et us not forget that [the victim] will remember these things probably for a long time after this, and she remembered them quite clearly today * * * the important things, the things that bothered her. * * * "

In our view, this assessment is warranted by the evidence presented. This assignment of error is overruled.

## Assignment of Error IV

"The jury verdict is against the manifest weight of the evidence."

 Our standard of review is well established:

"In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten* (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009, 1010–1011; see, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 218, 485 N.E.2d 717, 720. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. *Otten, supra,* 33 Ohio App.3d at 340, 515 N.E.2d at 1010–1011; *Martin, supra,* 20 Ohio App.3d at 175, 20 OBR at 218, 485 N.E.2d at 720.

██ We have already held that sufficient evidence was presented to permit a conviction for gross sexual imposition. The only testimony Uhler offered in his defense was his own. When reviewing a criminal judgment under a manifest weight challenge, we must always regard protests of innocence by the appellant as presumptively suspicious and self-serving. In this particular case, Uhler's versions of the events were, to put it charitably, far-fetched. Moreover, he did not disclose his extremely peculiar approach to sex education until Sergeant McGuire confronted him with the victim's statement. We cannot fault the jurors for finding the prosecution witnesses to be more credible. There is nothing in the record which otherwise suggests that the jury "lost its way" in returning the conviction.

Accordingly, this final assignment of error is also without merit. The judgment of the court of common pleas is affirmed in all respects.

*Judgment affirmed.*

CACIOPPO, P.J., and COOK, J., concur.