DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendant Richard Haendiges Jr. has appealed from his conviction of one count of gross sexual imposition. He has argued: (1) that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence;[1] (2) that the prosecutor committed several acts of misconduct; (3) that the trial court incorrectly precluded him from asking the victim whether she frequently greeted people by kissing them; (4) that the trial court incorrectly received expert testimony about the profile of the typical sex offender; (5) that the trial court incorrectly received expert testimony concerning child sexual abuse accommodation syndrome when there was no evidence to warrant this testimony; (6) that the trial court prematurely instructed the jury pursuant to State v. Howard
(1989), 42 Ohio St.3d 18, when the jury indicated that it had reached an impasse in its deliberations; and (7) that he was denied his right to due process of law. This Court affirms the trial court's judgment because: (1) the conviction was supported by sufficient evidence and was not against the manifest weight of the evidence; (2) the conduct of the prosecutor, even if improper, was not plain error; (3) the "kissing" evidence was correctly excluded because it was not relevant; (4) the trial court instructed the jury that the profile evidence was stricken; (5) there was evidence that the victim did not report the incident immediately, which warranted an explanation of the possible reasons why; (6) the record is inadequate to review the alleged error concerning the "Howard" charge; and (7) defendant failed to demonstrate that the claimed due process violation constituted plain error.
 I.
During August 1995, defendant was hired to repair fire damage at a condominium where Theresia C. was living with her three daughters, M.J.C., age 12; J.C., age ten; and M.D.C., age six or seven. During the few weeks that he was working at the condominium, defendant developed a romantic relationship with Theresia, who was then separated from her husband. Defendant also grew close to Theresia's daughters and would often tell them bedtime stories. He paid particular attention to J.C. According to Theresia, defendant said that J.C. "had opened up the door in his heart that was closed for a very long time."
One night, after defendant read the girls a bedtime story, he gave each of them a goodnight kiss. When he kissed J.C., he put his tongue in her mouth. Although that made her feel uncomfortable, J.C. was afraid to say anything. Defendant also kissed J.C. on the neck, leaving a red mark, or "hickey," and lifted up her shirt and blew on her stomach. Defendant also held J.C. under the buttocks, as he had on prior occasions.
J.C. did not tell anyone about the incident at first. Theresia began to notice that J.C. was apprehensive about being around defendant and that her behavior toward him had changed. Theresia repeatedly asked J.C. what was wrong. J.C. eventually told her about the incident and Theresia contacted the police and J.C.'s school psychologist. Defendant was indicted on two counts of gross sexual imposition. Following a jury trial, he was convicted of one of the two counts. Defendant timely appealed to this Court.
 II. A.
Defendant's first assignment of error is that his conviction of gross sexual imposition was not supported by sufficient evidence and was against the manifest weight of the evidence. To determine whether the evidence before a trial court was sufficient to sustain a conviction, an appellate court must view that evidence in a light most favorable to the prosecution:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. To determine whether a conviction is against the manifest weight of the evidence:
 [A]n appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten (1986), 33 Ohio App.3d 339, 340.
Defendant was convicted of gross sexual imposition, a violation of Section 2907.05(A) of the Ohio Revised Code, which provides:
 No person shall have sexual contact with another, not the spouse of the offender * * * when any of the following applies:
 (4) The other person * * * is less than thirteen years of age, whether or not the offender knows the age of that person.
Sexual contact is defined in Section 2907.01(B) of the Ohio Revised Code as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."
Defendant has not challenged the sufficiency of the State's proof that he touched an erogenous zone of J.C. He has focused his challenge on whether the state proved, by sufficient evidence, that he touched J.C. for the purpose of sexually arousing or gratifying either himself or J.C. In the alternative, he has argued that the weight of the evidence demonstrated that he did not touch J.C. for the purpose of sexual arousal or gratification, but that it was merely part of innocent horseplay.
The requisite state of mind for a crime can rarely be proven through direct evidence. See State v. Uhler (1992), 80 Ohio App.3d 113,123. Whether a defendant acted with a purpose of sexually arousing or gratifying himself or the victim must necessarily be established through evidence of the type, nature, and circumstances of his conduct, as well as the personality of the defendant. See Id.
The State presented sufficient evidence from which the jury could reasonably infer that defendant touched J.C. for the purpose of sexual gratification. The testimony of J.C. was that defendant, whom she had known for only a few weeks, often kissed her and held her by the buttocks and that she was uncomfortable when he did that. On the night in question, defendant again put his hand on J.C.'s buttocks and kissed her, but this time he put his tongue in her mouth. He then kissed or bit her on the neck, leaving a red mark, and lifted up her shirt and blew on her stomach. J.C. testified that she did not believe that this was innocent horseplay. The jury could reasonably infer from this testimony that such conduct between a grown man and a ten-year-old girl, whom he had known for only a short time, could have no innocent purpose, and, therefore, that it was for the purpose of sexual gratification.
Defendant's argument regarding the weight of the evidence focuses on his testimony that characterized the incident as nothing more than innocent horseplay. He has maintained on appeal that he was merely acting "like a big dog, licking her face and `biting' her on the neck." This "big dog" scenario might suggest that defendant had an innocent purpose and that his tongue went into J.C.'s mouth purely by accident. Although that was apparently how defendant described the incident when he was interviewed by the police, that was not his testimony at trial. At trial, defendant testified that he read the three girls a bedtime story and then kissed them all goodnight. He explained that J.C. was upset because he had finished his work there and she expressed concern that she would not see him again. Defendant testified that he decided to do something "silly or stupid" in an effort to cheer her up:
 [W]hen I went to kiss her, I stuck my tongue out, and I went down as if I was going to kiss her, and put my tongue on her face. And there was no reaction from her. * * * So I leaned over her again and did it a second time, and she said, "You stuck your tongue in my mouth."
Defendant further testified that he horsed around with J.C. some more by biting her on the neck, lifting up her shirt and blowing on her stomach, and by kissing her all over the face.
Defendant's testimony was contradicted by J.C., who testified that she did not recall being upset or that defendant touched her in an attempt to cheer her up or as part of innocent horseplay. It was for the jury to determine whether defendant or J.C. was telling the truth. See State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The credibility of J.C.'s testimony was challenged only insofar as it was contradicted by defendant's testimony. J.C. remained consistent in her recollection of the incident and she had no apparent motive to lie. The jury did not lose its way by believing J.C. Defendant's first assignment of error is overruled.
 B.
Defendant's second assignment of error is that the prosecutor committed several acts of misconduct. Specifically, he has alleged that: (1) in response to his request for a bill of particulars, the prosecutor produced a "rambling document which failed to clearly specify the separate acts of the Defendant"; and (2) at trial, he made improper remarks while examining several of the State's witnesses and during closing argument. Defendant failed to challenge this conduct in the trial court and, therefore, has waived his right to assert them absent plain error. See State v. Long (1978), 53 Ohio St.2d 91, paragraphs one and two of the syllabus. This Court will notice plain error only under exceptional circumstances to prevent a manifest miscarriage of justice. Id. at paragraph three of the syllabus.
The first act with which defendant takes issue is the prosecutor's response to his request for a bill of particulars. Defendant has asserted that the bill of particulars was a "rambling document" that misled him and prejudiced his defense. Even if this Court could conclude that the bill of particulars was deficient, it cannot conclude that, if defendant had raised this issue in the trial court, the State would not have amended it and cured the problem. Moreover, the record reveals that defendant was able to prepare his defense and to testify in detail as to what transpired on the night in question. He has failed to demonstrate any prejudice, much less plain error.
Defendant has also alleged that the prosecutor made improper remarks while examining several witnesses and during closing argument. For instance, the prosecutor referred to whether defendant's conduct was appropriate or proper, and asked J.C. whether defendant and his conduct made her uncomfortable. During closing argument, in describing the conduct of defendant toward J.C., the prosecutor twice used the term "fondling," a characterization that was unsupported by the evidence, according to defendant. Even if this Court were to conclude that some of these remarks were improper, defendant has failed to demonstrate that they resulted in a manifest miscarriage of justice. Defendant's second assignment of error is overruled.
 C.
Defendant's third assignment of error is that the trial court incorrectly excluded evidence "of the affectionate nature of the alleged victim toward persons outside her family circle." He has asserted that the trial court incorrectly precluded him from asking J.C. whether she frequently greeted people by kissing them on the mouth. Defendant's sole argument in support of this assigned error is that the evidence was not subject to exclusion under the rape shield statute, Section 2907.05(D) of the Ohio Revised Code.
The record of the sidebar conference on this issue reveals that, although the State based its objection to this question on the rape shield statute, the trial court questioned the relevance of the questions, and it appears that it excluded the evidence on that basis. Defendant has failed to even argue, much less demonstrate to this Court, that the question at issue was aimed at elicitling relevant testimony.
Although there were disputed facts regarding what had transpired between J.C. and defendant on the night in question, no one was claiming that it was J.C. who kissed defendant. Defendant's trial testimony indicated that he kissed J.C. and that the kissing was initiated by him. Evidence that J.C. frequently greeted people by kissing them did not tend to prove or disprove any fact of consequence to this case. See Rules 401 and 402 of the Ohio Rules of Evidence. The trial court correctly refused to receive evidence that failed to meet the threshold test of relevance. Defendant's third assignment of error is overruled.
 D.
Defendant's fourth assignment of error is that the trial court incorrectly received the testimony of a police officer concerning the profile of the typical sex offender, and that its instruction to the jury did not cure the error. Defendant did not preserve this error for review. Although he objected to the admission of this testimony, the sole basis of his objection was the qualification of the witness as an expert. He committed himself to those grounds and, therefore, limited the basis of any future challenge. When a party makes a specific objection to the admission of evidence, "he waives all other objections and cannot assert them on appeal." State v. Smith (1989), 63 Ohio App.3d 71,77. Because defendant raised a specific objection on different grounds from those he has asserted on appeal, he has waived this issue for review unless it rises to the level of plain error.
Although defendant did not raise this issue below, the trial court did. After it had received evidence relating to the profile of a sex offender, the trial court sua sponte decided that it should not have received this evidence. Without any prompting from defendant, the court gave a curative instruction to the jury immediately, instructing it that that part of the police officer's testimony was stricken and that "that portion [of his testimony] should not come into consideration at all in your deliberations." Defendant did not raise any objection to the curative instruction, nor did he move for a mistrial. This Court must assume that the jury followed the curative instruction and did not consider the testimony. See State v. Garner (1995), 74 Ohio St.3d 49, 59. Because defendant has failed to demonstrate any prejudice, much less plain error, defendant's fourth assignment of error is overruled.
 E.
Defendant's fifth assignment of error is that the trial court incorrectly received the testimony of J.C.'s school psychologist, Mary Ann Teitelbaum, about child sexual abuse accommodation syndrome. "Child sexual abuse accommodation syndrome" involves certain characteristics that frequently appear in child abuse victims, including consistency in recounting the abuse, denying that the abuse occurred, sexual knowledge beyond that usually associated with the victim's age, ability to recall the molestation over time, sleep and eating disorders, and depression. See State v. Davis (1989), 64 Ohio App.3d 334, 342-343. In this case, the symptom at issue was a victim's tendency to delay reporting the abuse to others. Dr. Teitelbaum briefly explained why victims of sexual abuse often do not report the abuse immediately. Defendant has not challenged the general admissibility of this type of evidence; rather, he has argued that it was not admissible in this case because there was no evidence that J.C. delayed reporting the alleged incident to her mother.
Again, defendant did not raise this challenge below and, therefore, has waived it unless it was plain error.[2]
Defendant has maintained that expert evidence to explain a delay in reporting was irrelevant and misleading here because there was no evidence of any delay. On the contrary, there was undisputed evidence that there was some period of delay between the date of the incident and the time when J.C. told her mother about it. The testimony of J.C., her mother, and her school psychologist indicated that J.C. did not report this incident immediately after it happened. J.C. testified that she did not tell her mother for at least a week, maybe even a month. Theresia testified that J.C. did not tell her about the incident until after she had noticed a change in J.C.'s behavior toward defendant. Theresia confronted J.C. several times before she confided in her. The length of the delay was not certain, however, because J.C. did not know the exact date of the incident. Defendant has failed to demonstrate that this delay was insufficient to warrant the admission of expert testimony concerning the probable reasons for the delay.
Dr. Teitelbaum's testimony on this issue was brief. She merely explained, in a few sentences, that a victim of sexual abuse will rarely report the incident immediately. Rather, it is typical for a victim to delay disclosing abuse because of a feeling of shame, fault, or embarrassment. She did not testify that J.C. fit the pattern of an abused victim, nor did she otherwise use the "syndrome" as evidence that J.C. was telling the truth. See Davis, supra, at 345. Defendant has failed to demonstrate that the trial court incorrectly received this evidence. Defendant's fifth assignment of error is overruled.
 F.
Defendant's sixth assignment of error is that, when the jury informed the trial court that it had reached an impasse in its deliberations, the court incorrectly instructed the jury pursuant to State v. Howard (1989), 42 Ohio St.3d 18. The trial court read a verbatim instruction from Howard, urging the jury to continue its deliberations and try to reach a decision in the case. Although defendant raised an objection to some of the language of the Howard instruction, he did not object to the trial court's decision to give this instruction. Defendant has maintained for the first time on appeal that the trial court gave the Howard
instruction prematurely. Although defendant's argument is not fully developed, from the cases he has cited, this Court assumes that he has suggested that the instruction was given too early in the jury's deliberations and that, due to an alleged coercive effect, it forced the jury to reach a hasty verdict. See State v.Maupin (1975), 42 Ohio St.2d 473, 486-487. Such a challenge, however, must focus on the length of the jury's deliberations, including how long it deliberated before reaching an impasse and how soon it reached its verdict after receiving the supplemental instruction. Defendant has failed to provide this Court with an adequate record to review the alleged error. Although the record reflects that the jury began its deliberations at 10:20 a.m. and returned with its verdict at 4:20 p.m., it does not indicate when the jury communicated to the court that it had reached an impasse or when the Howard instruction was given. Because defendant has failed to demonstrate any error on the record, his sixth assignment of error is overruled.
 G.
Defendant's seventh assignment of error is that he was deprived of his "due process right to appeal." This argument is essentially a repackaging of some of the issues he has already raised through other assignments of error. Defendant has not supported his specific due process argument with any legal authority or citations to relevant parts of the record. See Rule 16 (A)(7) of the Ohio Rules of Appellate Procedure. This Court will not develop defendant's argument for him.
Moreover, this due process challenge, as well as the underlying errors on which it is based, has been raised for the first time on appeal. Defendant, again, has the burden of demonstrating plain error. Defendant has not demonstrated that a manifest miscarriage of justice will result if this Court does not take notice of this alleged error. Defendant's seventh assignment of error is overruled.
 III.
Defendant's assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this court, directing the County of Lorain Common Pleas Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
 Exceptions. _______________________________ CLAIR E. DICKINSON
FOR THE COURT
BAIRD, J.
SLABY, J.
CONCUR
[1] This Court has consolidated two of defendant's assigned errors because they are closely related.
[2] Although defendant raised a few objections to Dr. Teitelbaum's testimony, none were based on the grounds he has asserted on appeal. Defendant had initially challenged Dr. Teitelbaum's testimony through a motion in limine that was based on her qualifications as an expert. He did not preserve his claimed error by challenging the testimony at the time it was received. See State v. Maurer (1984), 15 Ohio St.3d 239,259-260, fn. 14. Moreover, the grounds asserted in his motionin limine were not the specific grounds he has asserted on appeal.