OPINION
This is an appeal by defendant, Walter L. Heck, from a judgment of the Franklin County Municipal Court following a bench trial in which defendant was found guilty of public indecency.
On October 25, 1997, defendant was charged with one count of public indecency, in violation of Columbus City Code ("C.C.") Section 2307.09(A), and one count of resisting arrest, in violation of C.C. 2321.33(A). The defendant entered a guilty plea to the charge of resisting arrest, while entering a not guilty plea to the charge of public indecency. The defendant waived his right to a jury trial as to the public indecency charge and the trial court heard the case on August 20, 1998.
At trial, the state presented the testimony of Columbus Police Officer James Cross, who gave the following account of the events leading to defendant's arrest on October 25, 1997. In response to citizen complaints about sexual activity in city parks, Columbus police officers were monitoring activities in various parks. One of the locations under investigation was Helsel Park, located on the east side of Columbus. On October 25, Officer Cross and his partner, Officer Smith, arrived at Helsel Park at approximately 12:45 p.m. Officer Cross noticed a number of middle-aged men in the wooded area of the park. While Smith remained in the vicinity of the unmarked vehicle, Officer Cross traveled on foot toward the back of the wooded area.
As Officer Cross walked along a footpath, he noticed the defendant and another man "circling each other" and "making eye contact back and forth." (Tr. 22.) At that time, the officer was "standing off to the side watching it." (Tr. 22.) Later, the officer walked slowly past the two men. The defendant then approached Officer Cross; the defendant asked him whether he liked "to watch." (Tr. 24.) The officer responded that he "didn't know." (Tr. 24.) The defendant then asked Officer Cross if he "wanted to watch the old man * * * beat off." (Tr. 24.) Officer Cross interpreted the defendant's question to be whether he wanted to watch the other man masturbate. The officer stated, "I don't know." (Tr. 24.)
The defendant then asked the undercover officer whether he would "jerk off" if he saw "the old man jerk off." (Tr. 24-25.) Again, the officer responded that he did not know what he would do. The defendant then stated that he would "go get the old man started, and if I wanted to join, I could." (Tr. 25.) The defendant walked over to the other man and Officer Cross observed the defendant's "hand moving back and forth." (Tr. 25.) The officer moved closer and observed that the defendant had his hand on the other man's penis. The defendant looked "calmly excited." (Tr. 26.) The defendant was "rubbing his left leg" and appeared to be "getting aroused." (Tr. 26.) The officer indicated that the defendant "may have had an erection." (Tr. 27.)
At that point, Officer Cross showed the two men his badge and informed them they were under arrest. The defendant started screaming, "Oh, no, oh, no." (Tr. 27.) He then took off running, with Officer Cross in pursuit. The officer's walkie-talkie fell out of his pocket as he chased the defendant. The defendant ran through some thick brush and eventually fell to the ground. Officer Cross handcuffed the defendant to a tree branch. The officer then went back to retrieve his walkie-talkie when he "heard the tree branch break." (Tr. 28.)
The officer ran back toward the area where he had left the defendant; the officer observed the defendant running out toward the parking lot. Officer Cross yelled to other officers in the parking lot for assistance and the defendant was placed under arrest. Officer Cross then learned that the other suspect had walked out of the woods, entered his vehicle and driven away.
The defendant, who is fifty-seven years old, testified on his own behalf and gave the following testimony regarding the incident. The defendant was walking along a path in the woods on the date at issue when he noticed an elderly gentleman; the elderly man "mentioned that there was another man that was acting strangely that was hiding in the woods." (Tr. 57.) The defendant "didn't think that this was anything to be concerned about, and said, `[w]ell, I'm going in that direction.'" (Tr. 57.) After walking about twenty or thirty yards further, the defendant observed "a figure of a person in the woods." (Tr. 58.) The defendant testified that the man he saw in the woods at the time was Officer Cross. The defendant said to the man, "[i]t is a really nice day." (Tr. 58.) The defendant stated that the individual had a heavy coat and "seemed to show some movement under the coat, which I thought maybe he is masturbating." (Tr. 58.)
After the defendant reached the end of the path, he turned around and started to return. He noticed that Officer Cross had moved to the other side of the path and was behind some trees and bushes. The defendant also saw "the elderly gentleman who had moved from where I had first seen him." (Tr. 58.) As the defendant "passed Mr. Cross, he seemed to be moving his hand under his jacket, again, in a masturbation motion." (Tr. 58.) Officer Cross was watching the elderly man.
As the defendant walked by, he said to Officer Cross, "[a]re you getting off watching the old man?" (Tr. 59.) The officer responded, "yes." (Tr. 59.) Defendant then stated, "[y]ou're going to get in trouble." (Tr. 59.) The defendant further stated, "I'm getting out of here, but I'm going to tell the old man what you are doing." (Tr. 59.)
The defendant then gave the following testimony:
 So I walked ahead to the old man, and I told him that the other man was masturbating, at which point he started to masturbate. Evidently, they had been watching each other. And I said, "Now you're going to get us both in trouble." And at that point he said, "There is a police officer," and I turned around. At that point I saw the man open up his coat. I don't know if he lifted up his shirt or not, but I did see something flashy that could have been a badge. And I turned around to the old man, and I had my back to the officer. There was no way, there was no room for me to be beside him. And I said, "I didn't do anything and I'm going to get out of here." (Tr. 59.)
The defendant testified that the officer grabbed his shirttail and ripped it. The officer told him he was under arrest and threw defendant on the ground, twisting his arm behind his back. The officer hit the defendant in the chest, pulled out a gun and said, "I'm going to blow your head off." (Tr. 60.) The officer hit him on the chin with the tip of his gun; however, the defendant thought the officer's action was unintentional. The officer cuffed one of the defendant's hands. The defendant feared for his life, so he "pulled away from him and rolled across the ground." (Tr. 60.) The defendant got under a bush and started to run, but he started to experience chest pains and stopped.
The officer began to cuss at the defendant, calling him a "faggot" and a "queer." (Tr. 60.) The officer indicated that he had lost his radio so he handcuffed the defendant to a tree. According to the defendant, "[t]he problem was the tree was dead," and when he "sat down, the branch just broke." (Tr. 61.) The defendant "didn't know what to do because he was gone," so he saw the parking area and "thought I'm going to go out and see if I can get some help." (Tr. 61.) The defendant ran out and said, "[s]omebody help me. This guy is trying to kill me." (Tr. 61.) Two undercover police officers then took the defendant into custody.
At trial, the defendant denied touching the elderly man's penis or making any statements to the officer in an attempt to solicit sexual activity. He stated that he went to the park after working out at a local fitness center.
Following presentation of the evidence, the trial court found defendant guilty of both charges. Defendant was sentenced by entry filed October 5, 1998. The defendant has timely appealed.
On appeal, defendant sets forth the following two "questions presented" for review, which we construe as assignments of error:
QUESTION PRESENTED NO. 1:
 WHETHER THE TRIAL COURT ERRED IN FINDING THE DEFENDANT GUILTY OF PUBLIC INDECENCY, AS THE ALLEGED CONDUCT WAS NOT PROHIBITED BY THE STATUTE THAT THE DEFENDANT WAS CHARGED WITH VIOLATING
QUESTION PRESENTED NO. 2:
 WHETHER THE TRIAL COURT ERRED IN FINDING THE DEFENDANT GUILTY OF PUBLIC INDECENCY, AS ITS DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND NOT ALL ELEMENTS OF THE CRIME WERE PROVEN BEYOND A REASONABLE DOUBT
Under the first assignment of error, defendant argues that the trial court erred in finding him guilty of public indecency because, it is contended, the code provision he was charged under did not prohibit the alleged conduct.
The ordinance at issue, C.C. 2307.09, pertaining to public indecency, states in pertinent part:
 (A) No person shall recklessly do any of the following, under circumstances in which his or her conduct is likely to be viewed by and affront others, not members of his or her household:
 (1) Expose his or her private parts, or engage in masturbation;
Engage in sexual conduct;
 (3) Engage in conduct which to an ordinary observer would appear to be sexual conduct or masturbation.
Defendant's basic contention is that the term "masturbation" refers to activity restricted to the self-manipulation of one's genitals. Defendant argues that, in the present case, he is alleged to have handled another person's genitals, but nowhere in the record is there evidence that he manipulated his own genitals. Defendant further notes that the term "masturbation" is not defined in the Columbus City Code. Defendant cites State v. Dorso (1983), 4 Ohio St.3d 60, 62, for the proposition that a term left undefined by statute "is to be accorded its common, everyday meaning." Defendant maintains that the common and ordinary meaning of masturbation does not include the alleged illegal activity for which he was convicted.
In support of his contention that the conduct at issue was not prohibited by statute, defendant relies in part on this court's decision in Columbus v. Abdalla (Apr. 30, 1998), Franklin App. No. 97APC08-973, unreported (1998 Opinions 1426), in which a defendant was convicted of public indecency under C.C. 2307.09(A)(1). Under the facts of Abdalla, an undercover police officer encountered the defendant at a park. The defendant introduced himself to the officer, and the officer subsequently observed the defendant "fondling, rubbing and manipulating his penis through his jeans." Abdalla, supra, at 1428. The defendant then asked the officer if they could "get in your car." Id. at 1429. The undercover officer declined and told defendant that he would sit outside the car and watch. The defendant then sat inside his car and "continued to display his erect penis through his jeans * * * [and] continued to masturbate for approximately two minutes." Id. The officer then arrested the defendant for engaging in public indecency.
Defendant was convicted and, on appeal, asserted in part that the prosecution did not present sufficient evidence to establish that he engaged in masturbation. Specifically, the defendant in Abdalla asserted that the element of masturbation could not be proven without evidence that he either "1) exposed his genitals; 2) engaged in direct skin-to-genital manipulation; or 3) reached orgasm in the process of masturbating." Id. at 1435. In addressing and rejecting defendant's contentions, this court cited the Random House Dictionary of the English Language (2 Ed. 1987) 1184, which this court noted "defines masturbation as the `stimulation or manipulation of one's own genitals, esp. to orgasm; sexual self-gratification.'" Abdalla, supra, at 1435.
Defendant asserts that, in the present case, if this court were to use the same definition as in Abdalla, the conduct alleged by the state would clearly not violate the ordinance. The issue in Abdalla, however, was not whether the term masturbation includes the manipulation of another's genitals. Rather, as noted above, the definition set forth in Abdalla was provided in the context of the particular facts of that case, i.e., evidence of the defendant masturbating himself in a public setting.
This court in Abdalla did not have reason to include the entire definition set forth under the authority cited. However, the full passage defining masturbation under The Random House Dictionary of the English Language (2 Ed. 1987) 1184, states as follows:
 1. the stimulation or manipulation of one's own genitals, esp. to orgasm; sexual self-gratification. 2. the stimulation by manual or other means exclusive of coitus, of another's genitals, esp. to orgasm. (Emphasis added.)
Thus, in applying the above definition in the context of the conduct at issue in the instant case, such conduct would arguably fall within the definition of masturbation. We note that a number of other dictionary definitions indicate that the term "masturbate" includes not only self-manipulation but also manipulation of another. See, e.g., Webster's New World Dictionary (3d College Ed. 1988) 833 ("to manipulate one's own genitals, or the genitals of (another), for sexual gratification"); The Oxford Encyclopedic English Dictionary (3 Ed. 1996) 890 ("arouse oneself sexually or cause (another person) to be aroused by manual stimulation of the genitals"); Encarta World English Dictionary (1999) 1112 (defining "masturbate" as "to give oneself or somebody else sexual pleasure by stroking the genitals, usually to orgasm").
The state cites a number of cases from this court in which the term at issue has been used to describe conduct in which one person has masturbated another. See, e.g., State v. Wasmus
(Apr. 27, 1995), Franklin App. Nos. 94APA07-1013 94APA07-1014, unreported (1995 Opinions 1793, 1801) ("there is a videotape of appellant laying naked from the waist down with one of his victims while appellant masturbates himself and masturbates his young victim. Also the young boy is seen masturbating appellant");State v. Nagorski (Feb. 24, 1994), Franklin App. No. 93AP-792, unreported (1994 Opinions 548, 556) ("the sum of the victim's testimony indicates that appellant was unable to reach climax by means of anal or vaginal intercourse and only did so upon forced masturbation by the victim"); Columbus v. Skipper (July 30, 1981), Franklin App. Nos. 80AP-916 80AP-953, unreported (1981 Opinions 2265, 2266) ("Officer Phalen stated that Defendant-Appellant began to masturbate him"); Columbus v. Craig (Oct. 11, 1984), Franklin App. Nos. 84AP-135 84AP-136, unreported (1984 Opinions 2585, 2590) (affirming conviction for prostitution in which charging affidavit "states that appellant engaged in sexual activity for hire, to-wit: masturbation upon Detective T.J. Notturniano for $100"). While we do not view these cases as dispositive of the definitional issue, we agree with the city that the cases provide illustration of how the term is used in its common and ordinary meaning.
Having reviewed various definitions, we conclude that the substance or relevant part of the term masturbation involves the stimulation or manipulation of genital organs (regardless of whether the activity involves self-stimulation or the stimulation of another). See, e.g., Webster's Ninth New Collegiate Dictionary (1991) 732 (defining masturbation as "erotic stimulation of the genital organs commonly resulting in orgasm and achieved by manual or other bodily contact exclusive of sexual intercourse"). See, also, Encarta World English Dictionary, supra, at 1112 (defining "masturbation" as the stroking of genitals for sexual pleasure, usually to orgasm). Thus, while the term masturbation includes self-manipulation or self-excitation, we disagree with defendant's contention that the common and ordinary meaning of that term is restricted to only that particular conduct. Rather, we agree with the city that a definition of masturbation as connoting the manipulation of genital organs for sexual gratification by means other than sexual intercourse comports with the common, ordinary meaning of the term as well as the apparent intent of the statute.
We note that the language of C.C. 2307.09(A) is identical to, and patterned after R.C. 2907.09, Ohio's public indecency statute. The committee comment to that statute provides that "[t]he gist of this section is to prohibit sexual exposures or actual or simulated sexual displays, when done under circumstances in which such exposures or displays are likely to be seen by and offend persons not members of the offender's household." In considering the intent of the statute and the meaning of the term at issue, we find unpersuasive defendant's contention that he could not have been aware from the language of the statute that the activity alleged, i.e., one man manipulating the exposed penis of another man in a public setting, was proscribed. Further, as noted by the city, defendant's definition suggests potentially absurd consequences. For instance, under defendant's definition, although it would be unlawful for an individual to perform an act of self-masturbation in public, an act of mutual masturbation in public by two fully clothed males would not constitute prohibited activity.
Based upon the foregoing, defendant's first assignment of error is overruled.
Under the second assignment of error, defendant asserts that his conviction for public indecency was against the manifest weight of the evidence and that the state failed to prove all of the elements of the crime beyond a reasonable doubt.
In State v. Booth (May 6, 1999), Franklin App. No. 98AP-944, unreported (1999 Opinions 1109, 1117-1118), this court noted:
 In considering a claim that a conviction is not supported by sufficient evidence, "the evidence must be construed in a light most favorable to the prosecution, and the reviewing court must determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387, unreported (1993 Opinions 5437, 5438), citing State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. However, the test for reviewing the manifest weight of the evidence is slightly different, and "the evidence is not construed most strongly in favor of the state." Conley, supra, at 5438. Rather, "the appellate court must engage in a limited weighing of the evidence to determine whether there is sufficient, competent credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt." Id.
Defendant first contends that the prosecution failed to prove that defendant "engaged in masturbation." More specifically, defendant argues that there was insufficient evidence to show that defendant was aroused. Defendant notes that the state argued at trial that the evidence indicated defendant "masturbated the other individual and thereby aroused himself." (Tr. 96.) Defendant essentially contends that the testimony of the undercover officer was equivocal as to whether defendant was aroused. Defendant points to testimony by Officer Cross in which he stated that the defendant "may have had an erection" at the time he was manipulating the other individual's genitals. (Tr. 27.) The officer also stated during redirect examination that, "[i]t looked to me like he [the defendant] had an erection." (Tr. 51.)
Upon review of the record, we find defendant's contention on this issue to be without merit. In addition to the above testimony by the officer, the officer further stated that, prior to observing the defendant touch the other male, the defendant asked the officer if he liked to "watch," and further inquired whether he would "jerk off" if he could see the "old man jerk off." (Tr. 24-25.) The officer also testified that, during the time the defendant was manipulating the other man's penis, the defendant "looked calmly excited," and that he was "shaking his head, yeah," and "rubbing his left leg." (Tr. 26.) The officer testified that the defendant "looked like he was getting aroused." (Tr. 26.)
It has been held that "[p]roof of an accused's purpose or specific intent invariably requires circumstantial evidence, absent an admission." State v. Hendricks (Sept. 18, 1998), Erie App. No. E-96-060, unreported. Further, "the existence of prurient motivations may be discerned from `the type, nature and circumstances of the contact, along with the personality of the defendant.'" State v. Uhler (1992), 80 Ohio App.3d 113, 123. In the present case, in considering all of the surrounding facts and circumstances, the trier of fact could reasonably conclude that defendant engaged in the conduct at issue for the purpose of sexually arousing or gratifying himself.
We also find no merit to defendant's contentions that the prosecution failed to prove that he acted "recklessly" or that the alleged conduct was likely to be seen by others. Defendant asserts that he did not act recklessly, but rather acted "cautiously" in asking the undercover officer if he wanted to watch or participate in the activity. Defendant also contends that the testimony of the undercover officer indicates that the officer had to move closer to observe the activity, thus negating a finding that the conduct at issue was likely to be viewed by others.
"Recklessly" is defined under C.C. 2307.22(C) as follows:
 A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.
In the present case, the activity at issue occurred along a footpath of a park, during the afternoon hours on a fall Saturday. There was testimony that other individuals were in the park that afternoon. Officer Cross stated that there were children at the park playing in an open field, as well as individuals fishing at a creek. He also stated that there were individuals walking along the foot trails in the wooded area of the park. He estimated that there were "probably eight to ten men in the back of the woods at that time." (Tr. 19.)
As previously noted, there was testimony that the defendant approached the undercover officer and asked him if he liked to watch, and whether he would "jerk off" if he saw the old man "jerk off." There was testimony that the defendant stated that he was going to get the old man started. Officer Cross testified that he could observe the activity and that the defendant made no attempt to cover up his conduct. Rather, the officer indicated that the defendant "moved it aside so I could see." (Tr. 26.) The officer observed defendant manipulating the other man's penis. The officer also testified that, from the wooded area of the park, he had a clear view of other areas of the park.
Upon review, we find that there was sufficient evidence from which a trier of fact could conclude that defendant recklessly engaged in proscribed conduct which was "likely to be viewed by and affront others" not members of his household. We find unpersuasive defendant's contention that the facts of this case are similar to those in State v. Goldsmith (June 30, 1983), Clermont App. No. 83-01-002, unreported, in which the court reversed a defendant's conviction under R.C. 2907.09. Under the facts of Goldsmith, the defendant was arrested approximately two hundred fifty yards from a rest area, after traversing over a fenced area to a honeysuckle patch in which the honeysuckle was about as tall as one of the participants. The court in Goldsmith
concluded that "the honeysuckle was tall enough to obstruct the view of others who may have been offended by this conduct." Id.
We have previously noted testimony regarding the location and circumstances of the conduct in the instant case and we find the relevant facts to be distinguishable from Goldsmith.
Accordingly, defendant's second assignment of error is overruled.
Based upon the foregoing, defendant's first and second assignments of error are overruled and the judgment of the trial court is hereby affirmed.
Judgment affirmed.
BRYANT and BROWN, JJ., concur.