The STATE of Ohio, Appellant,

v.

BROWN, Appellee.

[Cite as *State v. Brown* (1993), 91 Ohio App.3d 427.]

Court of Appeals of Ohio,
Wood County.

No. 92WD098.

Decided Nov. 5, 1993.

*Alan R. Mayberry,* Wood County Prosecuting Attorney, and *Gary D. Bishop,* Assistant Prosecuting Attorney, for appellant.

*David E. Woessner,* for appellee.

---

*Per Curiam.*

This is an appeal from the December 1, 1992 decision of the Wood County Court of Common Pleas, granting appellee's motion to suppress. Appellant asserts the following sole assignment of error:

"The trial court erred in granting the defendant's motion to suppress on the basis that statements made by the defendant were coerced because no evidence was offered to support such a conclusion."

The following facts are relevant to this appeal. The Wood County Department of Human Services ("DHS") began an investigation regarding allegations of sexual contact between appellee Donald Brown and his fifteen-year-old step-daughter, Sandra Jones. On or about November 24, 1992, Sonja Snyder, a social worker from DHS, telephoned Carol Brown, Sandra's mother, at the Brown residence. The trial court found:

"The social worker stated to the Defendant's wife that * * * [Carol] and the Defendant had to appear at the Social Worker's office for an interview involving the alleged conduct of the Defendant. The Defendant's wife testified that when she asked what would happen if they failed to go to the interview, the social worker stated that the child would be removed from their home. The social worker testified she did not say this."

Carol Brown also testified that she did not want to go to the DHS office and asked that the social worker come to the residence to talk with the family. Snyder insisted that the interview must take place in the DHS office. Carol testified that she believed, if they did not go to the interview and cooperate, her daughter would be removed from their home.

On June 25, 1992, just one day after the telephone call, appellee, Carol, and Sandra went to DHS for the interview. The trial court found that:

"Over the objection of defendant and his wife, the child was interviewed by the social worker and Sergeant Conner. The Defendant and his wife requested they go with the child, but they were told that the child would be questioned separately. The child was questioned for about a half hour. After the child was questioned the Defendant and his wife were questioned. The Defendant, the Defendant's wife, the Social Worker, and Sergeant Conner from the Bowling Green Police Department were present at the interview."

Prior to the arrival at DHS, appellee and his wife did not know a police officer would be present for the interview. The trial court stated: "The interview took place in a small private office with the door closed. Sergeant Conner sat very close to the Defendant and his wife." Conner himself testified that he sat facing appellee while questioning him, moving from a position "2–3 feet away to possibly inches from the defendant." Conner also testified that, at one point, appellee backed up his chair, and expressed discomfort at Conner's proximity to appellee's body. The court further found that "Sergeant Conner, who is 6 foot 5 inches tall and weighs 330 pounds, controlled the interview and asked the vast majority of questions. The Defendant was told he was free to leave and that he was not under arrest, however, he was not given any of the *Miranda* warnings. The interview lasted over an hour."

Appellee's wife testified that the presence of Sergeant Conner, the prior threats of removal of the child, and "the way the interview was conducted [were] very intimidating, and that she believed that she had no option as to whether or not she and her husband cooperated with Sergeant Conner and the social worker. The defendant was intimidated by the physical presence of Sergeant Conner and/or by the fear of having the wife's child removed from the home."

The trial court granted appellee's motion to suppress the statements made at the DHS interview, stating that the statements were made as a result of undue pressure placed upon the defendant. The court determined that although appellee was not in total *physical* control and custody of the state at the interview, he was under mental duress which caused him to believe he was not free to leave. The court further stated that the "belief that the child would be removed from their home if they did not cooperate, coupled with the intense nature of the questioning, created an atmosphere such that a *reasonable person would believe they did not have the right to leave without grave consequences upon themselves or their family.*" (Emphasis added.)

The court found that appellee was coerced by the improper actions of the social worker and Conner, resulting in appellee's making involuntary statements contrary to the protection granted under the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution.

The courts of Ohio have held that in reviewing a motion to suppress, a reviewing court must remember that weighing the evidence and determining the credibility of the witnesses are the functions of the trial court. *State v. DePew* (1988), 38 Ohio St.3d 275, 277, 528 N.E.2d 542, 547, certiorari denied (1989), 489 U.S. 1042, 109 S.Ct. 1099, 103 L.Ed.2d 241; *State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583; *State v. Torres* (1990), 67 Ohio App.3d 268, 271, 586 N.E.2d 1153, 1155. The reviewing court must review the record to determine whether substantial evidence existed to support the trial court's ruling. *State v.*

*Washington* (Apr. 16, 1993), Lucas App. No. L–92–244, unreported, 1993 WL 115935.

■ Appellant argues that the record offers no evidence to support that appellee was coerced and that *Miranda* warnings were not required. We disagree.

■ The test to determine whether one is "in custody" or otherwise "significantly deprived of his freedom" for the purposes of *Miranda* protection depends on the circumstances of each case. See *Berkemer v. McCarty* (1984), 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317; *Torres, supra,* 67 Ohio App.3d at 271, 586 N.E.2d at 1155. The relevant inquiry, however, is how a reasonable man in the detainee's position would have understood the situation. *Berkemer, supra,* 468 U.S. at 442, 104 S.Ct. at 3151, 82 L.Ed.2d at 336; *Torres, supra.* "The subjective intent of the officer and the subjective belief of the suspect are irrelevant in this analysis." *State v. Uhler* (1992), 80 Ohio App.3d 113, 117, 608 N.E.2d 1091, 1093.

In a set of facts strikingly similar to the present case, we held in *State v. Torres, supra,* that an interrogation in a private office at the DHS, with a social worker and an investigator from the prosecutor's office present, illustrated an atmosphere that was definitely "police" dominated. Our prior decision in *State v. Torres* is dispositive of the issues presented here once again.

In the present case, the trial court specifically found that appellee, either directly or indirectly, was coerced by the actions of the DHS social worker and the police detective. The Browns were compelled, under threat of removal of their child, to physically present themselves at the DHS office for an interview. After being thus coerced to come to the DHS office, although not given *Miranda* warnings, appellee was then told he was free to leave or not to speak at the interview.

The trial court also specifically found that Sergeant Conner, at a height of six feet, five inches and weighing three hundred thirty pounds, physically and verbally dominated the setting of the interrogation. Conner admits that, at one point, he was so close to appellee that appellee backed his chair away, and verbally expressed his feelings of discomfort. The trial court, applying the correct standard, ruled that, under the threat of removal of the child, whether directly or indirectly from the social worker, and the physical intimidation of the interrogation itself, a reasonable person would not have felt free to leave without creating serious consequences to his family.

As noted above, the trial court evaluates and determines the credibility of witnesses. We agree with the trial court's assessment that the threat of removal of a child, coupled with the coercive methods of interrogation employed by the

DHS social worker and Sergeant Conner, created an in-custody, police-dominated atmosphere.

"Without proper safeguards the process of in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Miranda v. Arizona* (1966), 384 U.S. 436, 467, 86 S.Ct. 1602, 1624, 16 L.Ed.2d 694, 719.

A reasonable person in appellee's situation would thus feel compelled to submit to questioning which he would not have otherwise freely answered. See *Torres, supra.*

Appellant's reliance on *State v. Uhler* (1992), 80 Ohio App.3d 113, 608 N.E.2d 1091, is misplaced in that the facts of the present case are distinguishable from those in *Uhler*. The Wayne County Court of Appeals specifically found that Uhler's own testimony established that a reasonable person would not feel restrained or confined under similar circumstances. *Id.* at 117, 608 N.E.2d at 1093. The *Uhler* court also stated that the record contained no concrete evidence of coercion. In *Uhler*, the defendant, although advised that he need not speak and was free to leave at any time, voluntarily appeared, with no evidence of any implied threat of the possible removal of the child from the home. *Id.* at 116, 608 N.E.2d at 1092–1093. As stated heretofore, the determination of the weight and credibility of the evidence is for the trial court.

The record in the instant case contains testimony, not only from Carol Brown, but from Sergeant Conner, that establishes evidence of a setting in which a reasonable person would feel coerced and confined. Contrary to appellant's claim, the trial court did not base its decision on Carol Brown's beliefs, but rather on the description of the setting, created by her testimony and that of Sergeant Conner.

As in *Torres*, we again find that substantial evidence exists to support the trial court's determination that appellee was coerced and "in custody" and, therefore, was entitled to be informed of his constitutional rights under *Miranda*. Accordingly, appellant's sole assignment of error is found not well taken.

The decision of the Wood County Court of Common Pleas is hereby affirmed. Court costs are assessed to appellant.

*Judgment affirmed.*

HANDWORK and MELVIN L. RESNICK, JJ., concur.

GLASSER, P.J., dissents.

GLASSER, Presiding Judge, dissenting.

I respectfully dissent from the majority's finding that substantial evidence exists to support the trial court's determination that appellee was coerced and "in custody" and, therefore, was entitled to be informed of his constitutional rights. Considering the nature and the source of the testimony on this issue, the decision of the Wood County Court of Common Pleas should be reversed.