Derek D. Abrevaya appeals from a judgment of the Montgomery County Court of Common Pleas, which found him guilty of endangering children in violation of R.C. 2919.22(B)(2), following his no contest plea, and sentenced him accordingly.
On December 4, 1996, Abrevaya was indicted on two counts of torturing and/or cruelly abusing Courtney Gephart, a three-year old child, and causing her serious physical harm. On February 4, 1997, Abrevaya filed a motion to suppress "all statements made by him (and all other evidence obtained therefrom)" because he had not been advised of his Miranda rights prior to making certain statements and because his statements had not been voluntarily made.
The evidence presented at the March 5, 1997 suppression hearing, established the following:
 On November 25, 1996, Detective Sergeant Gary Vaughn and Patrolman Quigley of the Jackson Township Police Department received a dispatch to the Sycamore Medical Center at approximately 2:00 p.m. When they arrived at the hospital, Lisa Wood of Montgomery County Children's Services informed Vaughn that Courtney had been injured. Wood described Courtney's injuries, and the lead emergency room physician on duty at the time confirmed these injuries. Vaughn went to see Courtney and observed bruises to her face, abdominal area, back, and foot. Vaughn then spoke briefly with Abrevaya in a conference room and gathered personal information about him, such as his name, address, and social security number. Vaughn interviewed Tina Gephart, Courtney's mother, and also spoke with Polly Davis, Tina Gephart's sister, and Cory Gephart, Tina Gephart's six-year-old son.
Vaughn interviewed Abrevaya a second time in the conference room. Quigley was also present during this second interview, at which Vaughn and Abrevaya discussed Courtney's injuries. Abrevaya initially denied any involvement and stated that Courtney had been injured in a fall. When asked about Courtney's bruising, Abrevaya "started to shake and said `I did it.'" Vaughn asked what he had done, and Abrevaya admitted that he had hit Courtney. At that point, Vaughn stopped the interview and went to his car to get a pre-interview form, which stated the Miranda rights and contained a waiver of these rights. When Vaughn returned, he wrote the date, time, place, and the crime of child abuse on the form. He handed it to Abrevaya and read him the statements printed on the form. After reading each statement, Vaughn asked Abrevaya if he understood, Abrevaya answered that he had understood, and Vaughn then told him to initial the statement. Vaughn read Abrevaya the waiver-of-rights paragraph and wrote down that Abrevaya had completed thirteen years of school. Abrevaya signed the form. Vaughn then filled in the blanks on a "voluntary statement" form and read Abrevaya the Miranda warning stated thereon. Abrevaya placed his initials next to the warning and made a written statement, which included his handwritten paragraph narrating the incident involving Courtney and the question-answer dialog between Vaughn and Abrevaya. Quigley then took Abrevaya into custody and transported him the Montgomery County Jail.
Vaughn was the only witness at the suppression hearing. After hearing his testimony, the trial court overruled Abrevaya's motion on March 26, 1997. On April 25, 1997, Abrevaya pleaded no contest to two counts of endangering children (causing serious physical harm). On April 28, 1997, the trial court sentenced him to a term of imprisonment of four years on each count, to be served concurrently.
Abrevaya raises one assignment of error on appeal.
 THE TRIAL COURT ERRED IN OVERRULING DEFENDANT-APPELLANT'S MOTION TO SUPPRESS STATEMENTS MADE DURING AN INTERVIEW IN WHICH THE INVESTIGATING OFFICER FAILED TO ADEQUATELY ADVISE DEFENDANT-APPELLANT OF HIS CONSTITUTIONAL RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS.
Abrevaya contends that he was deprived of his rights under the Fifth and Fourteenth Amendments to the United States Constitution when questioned prior to being advised of his Miranda
rights.
The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." This privilege against self-incrimination is jeopardized "when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning." Miranda v. Arizona (1966), 384 U.S. 436, 478. Evidence obtained as a result of an interrogation is inadmissible for certain purposes in an accused's criminal trial unless the state demonstrates that the accused had been advised of and had waived his right to remain silent and his right to an attorney.Id. at 479. Police need not administer Miranda warnings to every person questioned; rather, only a custodial interrogation triggers the need for such warnings. State v. Biros (1997), 78 Ohio St.3d 426,440, citing Oregon v. Mathiason (1977), 429 U.S. 492,494-495. In Stansbury v. California (1994), 511 U.S. 318, ___,114 S.Ct. 1526, 1528-1529, the Court stated:
 In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but "the ultimate inquiry is simply whether there [was] a `formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." California v. Beheler (1983), 463 U.S. 1121, 1125 [quoting Mathiason, 429 U.S. at 495].
Whether a suspect's freedom of movement was restrained to such a degree depends on "how a reasonable man in the suspect's position would have understood his situation." Berkemer v. McCarty (1984),468 U.S. 420, 442. The objective circumstances of the interrogation, not the officers' or the accused's subjective views, are relevant to the determination of custody. Stansbury,114 S.Ct. at 1529.
Determining whether an accused was in custody involves two inquiries: the factual question of what were the circumstances surrounding the interrogation, and the legal question of whether a reasonable person in the accused's position would have felt free to end the interrogation and leave. State v. Estepp (Nov. 26, 1997), Montgomery App. No. 16279, unreported, citing Thompson v.Keohane (1995), ___ U.S. ___, 116 S.Ct. 457, 460, 465. Accordingly, we defer to the trial court's factual findings, particularly on witness credibility, but we independently determine whether these facts indicate that the suspect was in custody. Estepp, supra.
In Estepp, we confronted similar factual circumstances, where the accused had not been Mirandized prior to confessing, during an interview in a hospital meeting room, that he had abused the child being treated for injuries. In determining that a reasonable person in Estepp's position would have felt free to leave, we considered ten factors: (1) location of the interview; (2) whether the officers suspected the accused when the interview commenced; (3) whether the accused's freedom was restricted in any way; (4) whether he was handcuffed or told that he was under arrest; (5) whether the police threatened him; (6) whether the accused was physically intimidated; (7) whether the police verbally dominated the interview; (8) the accused's purpose for being at the location of the interview; (9) whether neutral parties were present; and (10) whether the police overpowered, tricked, or coerced the accused into making a statement. Estepp,supra, citing State v. Brown (1993), 91 Ohio App.3d 427; State v.Smith (June 3, 1997), Franklin App. No. 96-APA10-1281, unreported;State v. Evins (Feb. 28, 1997), Montgomery App. No. 15827, unreported; State v. Smith (May 10, 1996), Miami App. No. 95-CA-17, unreported; State v. Bowshier (Oct. 16, 1992), Clark App. No. 2898, unreported. We pointed out that a room inside a hospital is a place that persons typically feel free to leave and that Estepp had gone there seeking treatment for the abused child rather than appearing for police questioning. We noted that Estepp had presented no evidence to show that he was prevented from leaving the room prior to making incriminating statements nor that the police had coerced him into making the incriminating statements. Additionally, Estepp had not been handcuffed nor told that he was under arrest until after his confession. We concluded that "although a few factors point in Estepp's favor, a reasonable person would not have felt his freedom was restrained to the extent associated with a formal arrest." Estepp, supra.
In concluding that Abrevaya had not been in custody during the interview, the trial court stated:
 Detective Vaughn interviewed Defendant at the conference room of Sycamore Hospital. Such a neutral and familiar environment is a factor against a finding of custody. In addition, Defendant was free to leave the conference room. At no time during the interview was the Defendant under arrest. Thus, Defendant was not in custody for purposes of Miranda.
We agree that Abrevaya was not in custody when he admitted to causing Courtney's injuries. As in Estepp, the interview occurred in a hospital, and Abrevaya was there seeking medical attention for Courtney. Vaughn testified that Abrevaya had been free to leave at all times prior to the moment that he confessed and that Abrevaya had not been the primary suspect at the start of the second interview. Although the record does not indicate that Vaughn informed Abrevaya that he was not under arrest, Abrevaya did not offer testimony that Vaughn or Quigley restrained him in any way, threatened or physically intimidated him, coerced him into making a statement, or verbally dominated the interview. Furthermore, Vaughn and Abrevaya's first interview, which ended without Abrevaya being restrained, would have given Abrevaya reason to believe that he was not restrained from leave the second interview. We do not find it significant that a neutral party was not present during the second interview because the totality of the circumstances indicates that Abrevaya suffered no restraint equivalent to that of a formal arrest. Thus, the trial court correctly determined that Abrevaya was not in custody when he confessed to injuring Courtney.
Abrevaya's sole assignment of error is overruled.
The judgment of the trial court will be affirmed.
BROGAN, J. and FAIN, J., concur.
Copies mailed to:
Karen L. Sollars
R. Mark Henry
Hon. Barbara P. Gorman