OPINION
{¶ 1} Defendant-appellant David Jordan appeals his conviction and sentence for voluntary manslaughter and tampering with evidence. On May 18, 2004, in return for dismissal of other pending charges, Jordan plead to one count of voluntary manslaughter and one count of tampering with evidence, felonies of the first and third degree, respectively. The Greene County Court of Common Pleas sentenced Jordan to ten years for manslaughter and five years for tampering with evidence, the prison terms to be served consecutively for a total of fifteen years.
 I {¶ 2} On April 25, 2003, Steve Darnell, the victim, was a guest in Jordan's residence at 154 Oak Street in Fairborn, Ohio. Darnell, who was allegedly intoxicated, instigated a verbal confrontation with Jordan in the garage of Jordan's residence. The argument escalated to a point when Jordan allegedly struck Darnell several times about the head with a blunt instrument. As a result of the injuries he received from the encounter with Jordan, Darnell died shortly thereafter.
 {¶ 3} On July 29, 2003, Jordan filed a motion to suppress incriminating statements he made to Fairborn Police on the night of the alleged attack. After a hearing held on October 24, 2003, and November 10, 2003, the trial court overruled Jordan's motion. As a result, Jordan and his defense counsel entered into an agreement whereby Jordan pled no contest to voluntary manslaughter and tampering with evidence. On May 18, 2004, the trial court found Jordan guilty and sentenced him to a stipulated term of fifteen years imprisonment.
 {¶ 4} From his conviction and sentence, Jordan appeals.
 II {¶ 5} Jordan's first assignment of error is as follows:
 {¶ 6} "THE SENTENCES IMPOSED UPON THE APPELLANT WERE CONTRARY TO LAW BECAUSE THE TRIAL COURT DID NOT COMPLY WITH R.C. 2929.14
AND 2929.19 WHICH REQUIRE SENTENCING COURTS TO STATE, ON THE RECORD, REASONS TO SUPPORT FINDINGS THAT MAXIMUM AND CONSECUTIVE SENTENCES ARE WARRANTED."
 {¶ 7} In his first assignment, Jordan contends that the trial court erred when it failed to make the proper factual findings on the record during the sentencing hearing to support the imposition of maximum and consecutive sentences. Moreover, Jordan argues that R.C. § 2953.08(D) is inapplicable to his case because the prison term imposed upon him exceeded the maximum allowable term for his offenses. We disagree.
 {¶ 8} R.C. § 2953.08(D) states in pertinent part:
 {¶ 9} "(D) A sentence imposed upon a defendant is not subject to review under this section if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge."
 {¶ 10} In State v. Lentz (Feb. 28, 2003), Miami App. No. 01CA31, unreported, we encountered a similar situation to the instant case wherein the defendant pled no contest to two counts of rape. The trial court accepted the jointly recommended sentence of the defendant and the prosecution and sentenced the defendant to two ten-year prison terms to run consecutively.Id. At the time of sentencing, the trial court did not make findings under R.C. §§ 2929.19 and 2929.14 to support the sentences it imposed. Id.
 {¶ 11} On appeal, we found that the defendant's sentence satisfied each of the requirements specified in R.C. §2953.08(D). Since the defendant's sentence did not exceed the statutory range, it was authorized by law. We also noted that the trial court in Lentz made sure that the defendant understood the plea agreement and entered into the agreement voluntarily. Lastly, the trial court imposed the exact sentence contemplated by both parties in the plea agreement. In light of these facts, we held that the defendant's agreement to the jointly recommended sentence the court imposed waives his right to argue on appeal that the court erred when it imposed the recommended sentence absent the findings and reasons that R.C. §§ 2929.19 and 2929.14
require. Id.
 {¶ 12} "A sentence is authorized by law as long as the prison term imposed does not exceed the maximum term authorized by the offense." State v. Engleman (Aug. 18, 2000), Hamilton App. No. C-990845, discretionary appeal not allowed (2000),90 Ohio St.3d 1481, 738 N.E.2d 1254. Although Jordan contends otherwise, the sentence imposed by the trial court does not exceed the statutory range for the offenses he committed. Thus, Jordan's sentence is authorized by law. As in Lentz, supra, the trial court here clearly explained the plea agreement to Jordan and made sure his acceptance of said agreement was voluntary. The trial court also imposed the exact sentence contemplated by both parties. Although there is evidence that the trial court made some findings with respect to R.C. §§ 2929.19 and 2929.14, it was not required to do so to justify the imposition of consecutive and maximum sentences in this case. When Jordan voluntarily entered into the plea agreement created jointly by the parties, he waived his right to argue that the trial court erred when it imposed the recommended sentence absent the findings and reasons that R.C. §§ 2929.19 and2929.14 require under State v. Comer (2003), 99 Ohio St.3d 463. "It is well-settled that a party may not argue that the party was prejudiced by error which the party induced the trial court to commit." Lentz, supra, at ¶ 12.
 {¶ 13} Jordan's first assignment of error is overruled.
 III {¶ 14} Jordan's second assignment of error is as follows:
 {¶ 15} "EVEN IF THE TRIAL COURT COMPLIED WITH R.C. 2929.14
AND R.C. 2929.19, THE SENTENCES WOULD STILL BE CONTRARY TO LAW BECUASE PORTIONS OF THE STATUTES VIOLATE AN ACCUSED[`S] SIXTH AMENDMENT RIGHT TO TRIAL BY JURY, AND ARE THEREFORE UNCONSTITUTIONAL."
 {¶ 16} In his second assignment, Jordan contends that the sentences imposed by the trial court are unconstitutional as they are violative of Jordan's Sixth Amendment right to a jury as construed by the U.S. Supreme Court in U.S. v. Booker (2005),125 S.Ct. 738. In Booker, supra, the Court held that "any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Because this issue was not preserved in the trial court, we find this assignment moot.
 {¶ 17} Although the applicability of the Booker decision to Ohio sentencing law is currently the subject of a great deal of debate, this particular case does not allow for a discussion of whether the holding in Booker is applicable to Ohio law. Jordan's failure to raise this constitutional challenge in the trial court now precludes him from doing so for the first time on appeal. State v. Awan (1986), 22 Ohio St.3d 120, 123. Thus, we find that plain error was not committed and that consideration of the constitutional challenge advanced by Jordan is not warranted by the rights and interests of the parties involved in this case. See In re: M.D. (1988), 38 Ohio St.3d 149.
 {¶ 18} Jordan's second assignment is overruled.
 IV {¶ 19} Jordan's third and final assignment of error is as follows:
 {¶ 20} "THE TRIAL COURT ERRED WHEN IT DENIED THE APPELLANT'S MOTION TO SUPPRESS STATEMENTS HE MADE WHILE BEING QUESTIONED BY THE POLICE, WHEN HE WAS NOT ADVISED OF HIS RIGHTS UNDER MIRANDAV. ARIZONA, AND WHEN HE WAS NOT FREE TO LEAVE THE QUESTIONING.
 {¶ 21} In his third and final assignment, Jordan argues that the trial court erred when it overruled his motion to suppress incriminating statements he made to police officers as he was purportedly not free to terminate the interview and was not advised of his Miranda rights. We disagree.
 {¶ 22} In a motion to suppress, the trial court assumes the role of trier of fact, and as such, is in the best position to resolve questions of fact and evaluate witness credibility.State v. Brooks (1996), 75 Ohio St.3d 148, 154,661 N.E.2d 1030. Accordingly, in our review, we are bound to accept the trial court's findings of fact if it supports them with competent, credible evidence. State v. Landrum (2000),137 Ohio App.3d 718, 722, 739 N.E.2d 1159. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. Ornelas v. United States (1996),517 U.S. 690, 699, 116 S.Ct. 1657.
 {¶ 23} Here, Jordan argues that the police officers' questioning of him constituted a custodial interrogation because he was unable to leave. Jordan argues that the officers were required to advise him of his Miranda rights which they failed to do. According to the officers' testimony, at the beginning of the interview, Jordan was not a suspect in the attack of Darnell. The officers testified that they only wanted to question Jordan because they believed he was in the residence where the alleged offenses occurred. Moreover, the officers testified that Jordan was not under arrest and was free to leave the interview at any time as it was held in the living room of his home. It was not until the end of the interview that Jordan made incriminating statements and the officers present decided to place him under arrest for the attack on Darnell.
 {¶ 24} In Miranda v. Arizona (1966), 384 U.S. 436, the U.S. Supreme Court held the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates use of procedural safeguards to secure the defendant's privilege against self-incrimination. "Custodial interrogation" means questioning initiated by the police after the person has been taken into custody or otherwise deprived of his freedom in any significant way. State v. Steers (May 14, 1991), Greene App. No. 89-CA-38.
 {¶ 25} In Orozco v. Texas (1969), 394 U.S. 324, the U.S. Supreme Court held the defendant had been deprived of his freedom of action in a significant way even though police officers had questioned the defendant in his own home. Four police officers went to the boarding house where Orozco was living at 4 a.m., found him asleep in bed, and immediately began to question him with respect to a bar shooting. One of the officers testified that from the moment Orozco provided his name, he was not free to leave but was "under arrest." During the interrogation, Orozco provided the location of the murder weapon. In reversing the conviction and in ordering Orozco's statement and the weapon suppressed, Justice Black noted in the majority opinion:
 {¶ 26} "According to the officer's testimony, petitioner was under arrest and not free to leave when he was questioned in his bedroom in the early hours of the morning. The Miranda opinion declared that the warnings were required when the person being interrogated was `in custody at the station or otherwisedeprived of his freedom of action in any significant way.'384 U.S. at 477, 86 S.Ct. At 1629. (Emphasis added).
 {¶ 27} In State v. Estepp (Nov. 26, 1997), Montgomery App. No. 16279, we reiterated the controlling standard for deciding whether an individual is in custody:
 {¶ 28} "The determination whether a custodial interrogation has occurred requires an inquiry into `how a reasonable man in the suspect's position would have understood his situation.' * * * [T]he ultimate inquiry is simply whether there is a `formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." Citing State v. Biros (1997),78 Ohio St.3d 426, 678 N.E.2d 891. Neither an officer's subjective intent nor the defendant's subjective belief is relevant to this analysis. State v. Hopfer (1996),112 Ohio App.3d 521, 546, 679 N.E.2d 321. Thus, whether Jordan felt free to leave and whether the police officers considered the interaction an interview rather than an interrogation are irrelevant considerations. In Estepp, supra, we noted that the following factors have been used to assess how a reasonable person in the defendant's situation would have reacted to the questioning:
 {¶ 29} "1) Where did the questioning take place, i.e. was the defendant comfortable and in a place one would normally feel free to leave?
 {¶ 30} "2) Was the defendant a suspect at the time the questioning began (bearing in mind that Miranda warnings are not required simply because the investigation had focused);
 {¶ 31} "3) Was the defendant's freedom to leave restricted in any way;
 {¶ 32} "4) Was the defendant handcuffed or told he was under arrest;
 {¶ 33} "5) Were threats made during the interrogation;
 {¶ 34} "6) Was the defendant physically intimidated during the questioning;
 {¶ 35} "7) Did the police verbally dominate the interrogation;
 {¶ 36} "8) What was the defendant's purpose for being at the place where the questioning took place;
 {¶ 37} "9) Were neutral parties present at any point during the questioning;
 {¶ 38} "10) Did the police take any action to overpower, trick, or coerce the defendant into providing any statement?" See, State v. Smith (June 3, 1997), Franklin App. No. 96AP10-1281, unreported, State v. Evins (Feb. 28, 1997), Montgomery App. No. 15827, unreported, and State v. Brown
(1993) 91 Ohio App.3d 427, 632 N.E.2d 970.
 {¶ 39} Applying the above factors to the present case, we find that a reasonable person in Jordan's position would have understood that his movement was not restrained to the degree associated with a formal arrest. With respect to location, the interview was held in Jordan's home, a place where an individual would normally feel free to leave. After waking Jordan up, the four police officers allowed him to put on clothes and come out of his bedroom to the living room for questioning. Next, Detective Andrew Kindred, one of the officers who questioned Jordan, testified that at the outset of the interview, Jordan was not a suspect in the crime, and there is no evidence to the contrary. Detective Kindred testified that the investigation had not begun to focus on any one individual at that point.
 {¶ 40} Moreover, Jordan was not handcuffed or told he was under arrest until some time after the interview was concluded. Jordan does not assert that any threats were made during the interview nor does he contend that he was physically intimidated by the police officers present. In fact, the officers provided unchallenged testimony at the suppression hearing that Jordan was informed numerous times that he did not have to answer their questions and that he was free to leave at any time. As to the factor of verbal domination during the interview by the police, Detective Kindred appears to have been a major participant in the interview. However, this factor is insignificant because the police were investigating a violent crime, and the Detective would naturally have taken the lead in questioning. There is no evidence that demonstrates Jordan was not given the opportunity to fully answer the questions that were asked of him or that any attempt was made by the officers to trick Jordan into incriminating himself.
 {¶ 41} "Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administerMiranda warnings to everyone whom they question." Oregon v.Mathiason (1977), 429 U.S. 492, 495, 97 S.Ct. 711.
 {¶ 42} In light of the foregoing analysis, we find that someone in Jordan's position would not have felt his freedom was restrained to the extent associated with a formal arrest. Thus, we conclude that Jordan was not "in custody" for the purposes ofMiranda. The trial court acted properly when it overruled Jordan's motion to suppress.
 {¶ 43} Jordan's third and final assignment of error is overruled.
 V {¶ 44} All of Jordan's assignments of error having been overruled or rendered moot, the judgment of the trial court is affirmed.
Brogan, P.J. and Fain, J., concur.