OPINION
{¶ 1} Defendant-appellant Bryan D. Wilson appeals from his conviction and sentence for one count of gross sexual imposition (victim under 13 years old), in violation of R.C. § 2907.05(A)(4), a felony of the third degree.
 {¶ 2} On August 13, 2007, Wilson was charged by indictment with one count of gross *Page 2 
sexual imposition of a child under 13. Wilson was arraigned on August 16, 2007, stood mute, and the trial court entered a not guilty plea on his behalf.
 {¶ 3} On October 24, 2007, Wilson filed a motion to suppress incriminating statements he made to police. A hearing was held on said motion on October 26, 2007. On December 4, 2007, the trial court issued its findings of fact and ruling in which it denied Wilson's motion to suppress. The trial court filed a written judgment entry overruling Wilson's motion on December 11, 2007.
 {¶ 4} Following the denial of his motion to suppress, Wilson plead no contest to the sole count in the indictment on January 25, 2008. The trial court subsequently sentenced Wilson to 60 days of local incarceration along with five years of community control. The trial court also designated Wilson as a tier two sexual offender, and ordered him to register accordingly.
 I {¶ 5} On July 25, 2007, at approximately 11:00 a.m., Detective Brian Lewis of the Montgomery County Sheriffs Department traveled to Wilson's home. Upon arriving at Wilson's residence, Det. Lewis informed Wilson that he wished to speak with him regarding allegations of inappropriate sexual contact with a minor. Det. Lewis requested that Wilson come to the Montgomery County Sheriffs office at 1:00 p.m. that same day in order to be interviewed concerning the incident. Det. Lewis testified at the suppression hearing that he informed Wilson that the interview was voluntary, and he was not being ordered to attend.
 {¶ 6} Wilson appeared for the interview at 1:00 p.m., and Det. Lewis testified that he explained to Wilson the meaning of voluntary. Det. Lewis then asked Wilson to explain in his *Page 3 
own words the meaning of voluntary. Det. Lewis testified that Wilson provided a "proper explanation" of the term.
 {¶ 7} Det. Lewis then led Wilson back to an interview room where he was questioned. Wilson was not handcuffed or otherwise restrained during the interview. Additionally, Det. Lewis testified that Wilson did not, at any point, request that the interview be terminated nor did he ask that an attorney be present. At the end of the interview, Wilson was allowed to leave.
 {¶ 8} On August 8, 2007, a warrant was issued for Wilson's arrest for gross sexual imposition of child under 13. Wilson was arrested and taken back to Montgomery County Sheriffs office where he was again questioned by Det. Lewis, who was accompanied by Det. Martin Scherer. Det. Lewis testified that he removed Wilson's handcuffs prior to questioning him. Det. Lewis then produced a pre-interview Miranda form for Wilson to complete. The form lists the Miranda warnings, one through five, and contains a waiver of rights section. Det. Lewis testified that he read the form aloud with Wilson. Det. Lewis asked Wilson if he understood his rights as they were being read to him, and he indicated that he did. Once he finished reading the form to Wilson, Det. Lewis specifically asked him if he understood the section of the form that referred to coercion. Det. Lewis stated that Wilson indicated that he understood and did not have any questions.
 {¶ 9} Wilson then signed his initials next to each individualMiranda right on the form. Det. Lewis explained the waiver of rights section of the form, and Wilson signed the waiver, thus indicating his desire to waive his Miranda rights and participate in the interview. Wilson did not ask for an attorney, and Det. Lewis testified that he appeared lucid and coherent throughout the interview. Det. Lewis testified that neither he nor Det. Scherer made any threats *Page 4 
or promises to Wilson during the interview. Wilson subsequently made incriminating statements and admissions.
 {¶ 10} Following the interview, Det. Lewis asked Wilson if he was willing to have the interview recorded on audio tape, and Wilson agreed. During the initial portion of the recorded interview, Wilson reiterated that Det. Lewis had informed him of his Miranda rights, that he had understood those rights, and that he voluntarily waived those rights by signing the waiver section of the pre-interview Miranda form. Wilson also stated that he had not been coerced into submitting to the interview or signing the pre-interview form. During the recorded interview, Wilson again made incriminating statements regarding the charge of gross sexual imposition.
 {¶ 11} As stated previously, the trial court overruled Wilson's motion to suppress the admissions he made during the two separate interviews conducted by Det. Lewis. Ultimately, Wilson plead no contest to the charge of gross sexual imposition of a child under 13, and was sentenced accordingly.
 {¶ 12} It is from this judgment that Wilson now appeals.
 II {¶ 13} Wilson's sole assignment of error is as follows:
 {¶ 14} "THE TRIAL COURT ERRED IN DENYING WILSON'S MOTION TO SUPPRESS AS WILSON'S STATEMENTS WERE OBTAINED IN VIOLATION OF WILSON'S FEDERAL AND STATE CONSTITUTIONAL RIGHTS."
 {¶ 15} In his sole assignment, Wilson advances three arguments wherein he contends that the trial court erred when it overruled his motion to suppress. Initially, he argues that the record establishes that he was in custody during the first interview held on July 25, 2007, and *Page 5 
thus, entitled to Miranda warnings before Det. Lewis could question him. Wilson maintains that any admissions made during the interview on July 25, 2007, were fruit of the poisonous tree and should have been suppressed. Wilson also asserts that his post-Miranda admissions made during the August 8, 2007, interview should have been suppressed because the admissions were the "fruit of a Fifth Amendment-violativepre-Miranda statement." Lastly, Wilson argues that hispost-Miranda statements should have been suppressed because the he did not knowingly waive his Miranda rights, and his statements were not voluntarily obtained as a result.
 {¶ 16} In regards to a motion to suppress, "the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." State v.Hopfer ( 1996), 112 Ohio App.3d 521, 548, 679 N.E.2d 321, quotingState v. Venham (1994), 96 Ohio App.3d 649, 653, 645 N.E.2d 831. The court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. State v.Isaac (July 15, 2005), Montgomery App. No. 20662, 2005-Ohio-3733, citingState v. Retherford (1994), 93 Ohio App.3d 586, 639 N.E.2d 498. Accepting those facts as true, the appellate court must then determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied.Id.
 A {¶ 17} Wilson first argues that Det. Lewis' questioning of him constituted a custodial interrogation because he was unable to leave. WIlson argues that Det. Lewis was required to advise him of hisMiranda rights which he failed to do. Det. Lewis' testified that Wilson was asked to voluntarily come to the police station to be interviewed. Det. Lewis also testified that Wilson was not ordered to come to the *Page 6 
interview, but rather could attend only if he wanted. Moreover, Det. Lewis testified that Wilson was never placed under arrest and was free to leave the interview at any time. Before the interview began, Det. Lewis made sure that Wilson understood that he was there voluntarily and was not being to forced to answer any questions. At the end of the interview, Wilson was allowed to leave the police station without any interference from the detectives.
 {¶ 18} In Miranda v. Arizona (1966), 384 U.S. 436, the U.S. Supreme Court held the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates use of procedural safeguards to secure the defendant's privilege against self-incrimination. "Custodial interrogation" means questioning initiated by the police after the person has been taken into custody or otherwise deprived of his freedom in any significant way. State v. Steers (May 14, 1991), Greene App. No. 89-CA-38.
 {¶ 19} In State v. Estepp (Nov. 26, 1997), Montgomery App. No. 16279, we reiterated the controlling standard for deciding whether an individual is in custody:
 {¶ 20} "The determination whether a custodial interrogation has occurred requires an inquiry into `how a reasonable man in the suspect's position would have understood his situation.' *** [T]he ultimate inquiry is simply whether there is a `formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." Citing State v. Biros (1997), 78 Ohio St.3d 426, 678 N.E.2d 891. Neither an officer's subjective intent nor the defendant's subjective belief is relevant to this analysis. State v. Hopfer (1996), 112 Ohio App.3d 521,546, 679 N.E.2d 321. Thus, whether Wilson felt free to leave and whether the police officers considered the *Page 7 
interaction an interview rather than an interrogation are irrelevant considerations. In Estepp, supra, we noted that the following factors have been used to assess how a reasonable person in the defendant's situation would have reacted to the questioning:
 {¶ 21} "1) Where did the questioning take place, i.e. was the defendant comfortable and in a place one would normally feel free to leave?
 {¶ 22} "2) Was the defendant a suspect at the time the questioning began (bearing in mind that Miranda warnings are not required simply because the investigation had focused);
 {¶ 23} "3) Was the defendant's freedom to leave restricted in any way;
 {¶ 24} "4) Was the defendant handcuffed or told he was under arrest;
 {¶ 25} "5) Were threats made during the interrogation;
 {¶ 26} "6) Was the defendant physically intimidated during the questioning;
 {¶ 27} "7) Did the police verbally dominate the interrogation;
 {¶ 28} "8) What was the defendant's purpose for being at the place where the questioning took place;
 {¶ 29} "9) Were neutral parties present at any point during the questioning;
 {¶ 30} "10) Did the police take any action to overpower, trick, or coerce the defendant into providing any statement?" See, State v.Smith (June 3, 1997), Franklin App. No. 96AP10-1281, unreported,State v. Evins (Feb. 28, 1997), Montgomery App. No. 15827, unreported, and State v. Brown (1993) 91 Ohio App.3d 427, 632 N.E.2d 970.
 {¶ 31} Applying the above factors to the present case, we find that a reasonable person in Wilson's position would have understood that his movement was not *Page 8 
restrained to the degree associated with a formal arrest. With respect to location, the interview was held at the police station; however, Wilson came to the station voluntarily after being invited by Det. Lewis. It should be noted that Wilson drove himself to the police station and was not transported by the police. Once there, Wilson was not handcuffed nor was he told he was under arrest at any point during the interview. Wilson does not assert that any threats were made during the interview nor does he contend that he was physically intimidated by Det. Lewis' presence. In fact, Det. Lewis provided unchallenged testimony at the suppression hearing that Wilson was informed numerous times that he did not have to answer their questions and that he was free to leave at any time. As to the factor of verbal domination during the interview by the police, Det. Lewis appears to have been a major participant in the interview. However, this factor is insignificant because the police were investigating a charge of gross sexual imposition, and the Detective would naturally have taken the lead in questioning. There is no evidence that demonstrates Wilson was not given the opportunity to fully answer the questions that were asked of him or that any attempt was made by the officers to trick Wilson into incriminating himself.
 {¶ 32} "Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer Miranda warnings to everyone whom they question." Oregon v. Mathiason (1977), 429 U.S. 492, 495, 97 S.Ct. 711.
 {¶ 33} In light of the foregoing analysis, we find that someone in Wilson's position would not have felt his freedom was restrained to the extent associated with a *Page 9 
formal arrest. Thus, we conclude that Wilson was not "in custody" for the purposes of Miranda. The trial court acted properly when it overruled Wilson's motion to suppress any statements he made during the voluntary interview held on July 25, 2007.
 B {¶ 34} Wilson next asserts that his post-Miranda admissions made during the second August 8, 2007, interview should have been suppressed because the admissions were the "fruit of a Fifth Amendment-violativepre-Miranda statement."
 {¶ 35} In support of his assertion, Wilson relies on the U.S. Supreme Court's holding in Missouri v. Seibert (2004), 542 U.S. 600,124 S.Ct. 2601, wherein the court held that Miranda warnings given mid-interrogation, after the defendant gave an unwarned confession, were ineffective. Thus, the same confession which was repeated afterMiranda warnings were provided was inadmissible for use at trial.
 {¶ 36} The instant case is factually distinguishable from the facts presented in Seibert. The defendant in Seibert was "in custody" for purposes of Miranda when she was initially questioned by the police. Thus, the police in Seibert were required to inform the defendant of her constitutional rights before attempting to elicit a confession. As we previously stated, Wilson was not "in custody" for the purposes ofMiranda during the July 25, 2007, interview conducted by Det. Lewis. Wilson's attendance and participation in the interview were totally voluntary, and Wilson was made aware that he was free to leave at any time. Thus, contrary to Wilson's assertion, Det. Lewis was not required to inform him of his Miranda rights because he was not in custody, and the trial court correctly held that the statements he made during the July 25, 2007, interview were not subject to suppression. It follows then that *Page 10 
any post-Miranda admissions he made during the second interview on August 8, 2007, cannot also be subject to suppression as "fruit of the Fifth Amendment-violative pre-Miranda statement" when there no was violation of Wilson's constitutional rights in the initial, voluntary interview.
 C {¶ 37} Regarding the interview held on August 8, 2007, Wilson argues that his post-Miranda statements should have been suppressed because the he did not knowingly waive his Miranda rights, and his statements were not voluntarily obtained as a result.
 {¶ 38} As the trial court correctly noted, "[t]he voluntariness of a suspect's statement has always been the basic constitutional test for admissibility." "To be knowing, intelligent and voluntary, the relinquishment of [Miranda] rights must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception, and the waiver must have been made with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" State v. Abner, Montgomery App. No. 20661, 2006-Ohio-4510. "A suspect's decision to waive his privilege against self-incrimination is made voluntarily, absent evidence that his will is overborne and his capacity for self-determination was critically impaired because of coercive police conduct." State v. Otte, 74 Ohio St.3d 555, 562,660 N.E.2d 711,1996-Ohio-108. "In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of *Page 11 
interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." State v. Winterbotham, Greene App. No. 05CA100, 2006-Ohio-3989.
 {¶ 39} In the case at bar, Wilson clearly acknowledged and waived his rights, and made admissions to Det. Lewis. There was nothing before the trial court to suggest that Wilson's will was "overborne and his capacity for self-determination was critically impaired" due to Det. Lewis' conduct. There is nothing in the record to suggest that Wilson misunderstood the rights he voluntary waived, nor is there any indication that he was coerced into signing the waiver and providing a confession. We agree with the trial court that, considering the totality of the circumstances, the State established that Wilson's statements were voluntary, and that they were made after a knowing and intelligent waiver of his Miranda rights.
 {¶ 40} Wilson's sole assignment of error is overruled.
 III {¶ 41} Wilson's sole assignment of error having been overruled, the judgment of the trial court is affirmed.
GRADY, J. and FROELICH, J., concur. *Page 1